[No. B167189. Second Dist., Div. Five. Dec. 30, 2003.]

THE PEOPLE, Plaintiff and Appellant, v.
ERIC DUANE HAMILTON, Defendant and Respondent.

## Counsel

Steve Cooley, District Attorney, Patrick D. Moran and Shirley S. N. Sun, Deputy District Attorneys, for Plaintiff and Appellant.

Benedon & Serlin and Douglas G. Benedon for Defendant and Respondent.

OPINION

MOSK, J.—

## INTRODUCTION

This appeal concerns a victim restitution obligation under former Penal Code section 1202.4.[1] The principal issues presented are whether either of the following may be offset against a criminal defendant's victim restitution obligation: (1) payments to the victim by the victim's insurance carrier; or (2) payments to the victim by the insurer of defendant's mother to settle the victim's civil action against the mother and defendant. We hold that neither payment may offset the defendant's restitution obligation.

## BACKGROUND

Respondent Eric Duane Hamilton (Hamilton) shot and seriously injured Donald Hill (Hill) while Hill performed work for Hamilton and Hamilton's mother, Lena Hamilton (Ms. Hamilton). Pursuant to a plea agreement, Hamilton pleaded no contest to assault with a firearm in violation of section 245, subdivision (a)(2). On November 4, 1996, the trial court sentenced Hamilton to eight years in prison, but suspended the sentence and placed him on probation for five years. The trial court imposed as a condition of Hamilton's probation the payment of $15,000 in victim restitution. The trial court revoked and reinstated Hamilton's probation on numerous occasions.

Sometime in early 1998, Hill sued Hamilton and Ms. Hamilton in a civil action for Hill's injuries. Ms. Hamilton's insurer paid Hill between $25,000 and $30,000[2] to settle the claim on her behalf and obtained Hill's release of claims and dismissal with prejudice of the lawsuit against Ms. Hamilton and Hamilton. Hill died sometime after the settlement. Hamilton has made no restitution payments to Hill or to Hill's successor, his mother, Tina Wright (Ms. Wright).

In March 2003, the People sought to revoke Hamilton's probation for failure to pay his victim restitution obligation. At the April 10, 2003 probation revocation hearing, Ms. Wright testified concerning the cost of Hill's medical care and the settlement with Ms. Hamilton's insurer. Ms.

---

[1] Further statutory references are to the Penal Code unless otherwise indicated.

[2] The record is unclear whether the amount of the settlement was $25,000 or $30,000. Although there is testimony indicating Hill's civil action was settled for $30,000, documentation provided by Ms. Hamilton's insurer shows a payment of only $25,000.

Wright said that although her health insurance[3] and the settlement with Ms. Hamilton's insurer covered some of Hill's medical expenses, Ms. Wright incurred expenses that were not reimbursed. Ms. Wright also testified that she could not reconstruct her expenses with certainty because she had lost much of the necessary documentation.

The trial court's inquiry at the April 10, 2003 hearing focused on Ms. Wright's "out of pocket" expenses that had not been reimbursed either by her insurance or by the civil action settlement proceeds:

"THE COURT: . . . My query to you, though, is in actual out of pocket expenses, what were the actual costs for bills and everything?

"MRS. WRIGHT: I had my bills, I lost them on the elevator, and—

"THE COURT: Just tell me.

"MRS. WRIGHT: Well, the insurance from the hospital and then from the cardiologies (*sic*) and from the psychiatrists, and other expense, and the lawyer expense, ran way over what the insurance paid.

"THE COURT: I know, but your—are you talking about the deductibles? Because you know if you have health insurance or hospitalization, the insurance will pay and then there is usually a percentage that is not covered.

"MRS. WRIGHT: The insurance paid some of it and then I had to pay a lot of it myself.

"THE COURT: So I just want to know what was the total loss, money that you had to put out of your pocket?"

The trial court then asked Ms. Wright to provide an accounting of her "out of pocket" expenses but noted that it appeared Hamilton's restitution obligation had been satisfied:

"THE COURT: This is what I would like you to do. If you can reconstruct your bills and give us a total of everything that you had to pay out of your pocket and then subtract that from the $30,000 that you received, minus attorney fees, minus your deductibles on the insurance, and then please forward that to this counsel and to the prosecutor. And if it looks like it's

---

[3] It appears that Ms. Wright's insurer paid for some of Hill's medical expenses. It is not clear if the payments were made directly to the provider or to Ms. Wright. It is also unclear if the insurance was Ms. Wright's insurance that covered Hill or was Hill's insurance proceeds to which she succeeded. We refer to the insurer as Ms. Wright's insurer.

grossly out of whack here, the court—this gentleman is still on probation, and we'll bring everybody back in and have a further conversation. [¶] But right now, it appears to the court that there's been a restitution. . . ."

The trial court concluded by advising Ms. Wright that if she did not provide an accounting of her "out of pocket" expenses, the court would consider Hamilton's restitution obligation satisfied:

"THE COURT: All right, thank you very much for coming in, and if you can reconstruct your bills, if they do go over 15,000 out of pocket expenses, ma'am, please give a copy of your breakdown and forward it to counsel Hedding and to the People.

"MRS. WRIGHT: All right.

"THE COURT: All right, and if we don't—if counsel Hedding and the People don't hear from you, within the next two weeks, then we will assume that, you know, it's over and done with, all right? Okay, thank you ma'am."

After the foregoing exchange, the trial court reinstated Hamilton's probation, under the same terms and conditions existing before the April 10, 2003 hearing date. The trial court's minute order issued after the hearing states "probation reinstated on original terms and conditions." There is no indication in the record that Ms. Wright provided any further information to the court. The People appeal from the trial court's oral ruling concerning Hamilton's restitution obligation.

## DISCUSSION

The People contend the trial court erred in offsetting any payments made by Ms. Wright's and Ms. Hamilton's insurers against Hamilton's restitution obligation. The People argue in the alternative that the amount of any permissible offset should have been limited to payments made by Ms. Hamilton's insurer to compensate Hill for losses expressly covered by former section 1202.4. Because these issues involve questions of statutory interpretation, we review them de novo. (*People v. Saephanh* (2000) 80 Cal.App.4th 451, 457 [94 Cal.Rptr.2d 910].)

### A. *Appealability of the Trial Court's Order*

The People contend that the trial court's oral ruling at the April 10, 2003 hearing offsetting Hamilton's victim restitution obligation against payments made by Ms. Hamilton's insurer and by Ms. Wright's insurer is appealable

under subdivision (a)(5) and (a)(10) of section 1238. Hamilton maintains that the trial court's oral ruling is not an appealable "order" within the meaning of section 1238.

■ Section 1238 delineates the People's right to appeal in criminal cases. (*People v. Douglas* (1999) 20 Cal.4th 85 [82 Cal.Rptr.2d 816, 972 P.2d 151].) Section 1238, subdivision (a)(5) accords the People the right to appeal from "an order made after judgment, affecting the substantial rights of the people." Section 1238, subdivision (a)(10) authorizes an appeal from "[t]he imposition of an unlawful sentence" and defines an "unlawful sentence" as "the imposition of a sentence not authorized by law or the imposition of a sentence based upon an unlawful order of the court which strikes or otherwise modifies the effect of an enhancement or prior conviction." (§ 1238, subd. (a)(10).)

The trial court's oral ruling at the April 10, 2003 hearing concerning Hamilton's victim restitution obligation is appealable under section 1238, subdivision (a)(5). The April 10, 2003 ruling was made after the imposition of sentence on November 4, 1996. Because the ruling effectively reduced Hamilton's restitution obligation, it affects a substantial right of the People. (*People v. Douglas, supra,* 20 Cal.4th at pp. 90–92 [order reducing felony count to misdemeanor after court suspended imposition of judgment and granted defendant probation appealable under § 1238, subd. (a)(5)]; *People v. Minjarez* (1980) 102 Cal.App.3d 309, 312 [162 Cal.Rptr. 292] [order granting defendant credit for 760 days spent in custody following court's imposition of judgment and sentence appealable under § 1238, subd. (a)(5)].) The People have a substantial interest in ensuring the enforcement of victim restitution obligations, mandated both by the California Constitution and by statute. An oral ruling in a criminal case, such as the one made here, may be appealed. (*Minjarez,* at p. 312 [trial court's oral ruling reducing defendant's sentence by crediting time in custody appealable].)

Hamilton contends that the trial court's statements regarding victim restitution were equivocal and did not constitute a final order. Although the trial court did leave open the possibility for Ms. Wright to present a future accounting of her "out of pocket" expenses and offered to "bring everyone back in and have a further conversation" at that time, the court made clear that the focus of any future proceedings regarding restitution would be Ms. Wright's "out of pocket" expenses, i.e., those unreimbursed by her insurance or by the settlement with Ms. Hamilton. We conclude the trial court's oral ruling was sufficiently explicit to serve as the basis for an appeal. Because we hold that the trial court's ruling is appealable under section 1238, subdivision (a)(5), we need not address its appealability under section 1238, subdivision (a)(10).

## B. *Victim Restitution*

■ The California Constitution and the Penal Code mandate Hamilton's victim restitution obligations. Article I, section 28, subdivision (b) of the California Constitution directs the legislature to adopt laws implementing the "right" of "all persons who suffer losses as a result of criminal activity" to receive "restitution from the persons convicted of the crimes," and ensuring that "restitution shall be ordered" from convicted criminals in every case in which a crime victim suffers a loss "unless compelling and extraordinary reasons exist to the contrary." (Cal. Const., art. I, § 28, subd. (b).) The Legislature adopted implementing legislation and has amended it several times thereafter.[4] Former section 1202.4 governs Hamilton's restitution obligation in this case.[5] That provision stated: "(f) In every case in which a victim has suffered economic loss as result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims. Restitution payments made pursuant to this subdivision shall be made to the Restitution Fund to the extent that person has received assistance pursuant to Article 1 (commencing with Section 13959) of Chapter 5 of Part 4 of Division 3 of Title 2 of the Government Code. [¶] (g) Restitution ordered pursuant to subdivision (f) shall be imposed in the amount of the losses, as determined. The court shall order full restitution unless it finds clear and compelling reasons for not doing so, and states them on the record. *Determination of the amount of restitution ordered pursuant to this section shall not be affected by the indemnification or subrogation rights of third parties. Restitution shall, to the extent possible, be of a dollar amount that is sufficient to fully reimburse the victim or victims, for every determined economic loss incurred as the result of the defendant' criminal conduct. . . .*" (Stats. 1995, ch. 313, § 5, italics added.)[6] The statute defined "victim" to include the immediate

---

[4] (Stats. 1996, ch. 629, § 3; Stats. 1997, ch. 527, § 4; Stats. 1998, ch. 201, § 1; Stats. 1998, ch. 587, § 6.5; Stats. 1999, ch. 121, § 1; Stats. 1999, ch. 584, § 4; Stats. 2000, ch. 198, § 4; Stats. 2000, ch. 1016, § 9.5.)

[5] The restitution law in effect on the date of the crime, March 25, 1996, applies in this case. (*People v. Birkett* (1999) 21 Cal.4th 226, 247, fn. 21 [87 Cal.Rptr.2d 205, 980 P.2d 912] (*Birkett*).)

[6] The statute now reads in relevant part as follows:

"(f) In every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court. If the amount of loss cannot be ascertained at the time of sentencing, the restitution order shall include a provision that the amount shall be determined at the direction of the court. The court shall order full restitution unless it finds compelling and extraordinary reasons for not doing so, and states them on the record.

"(1) The defendant has the right to a hearing before a judge to dispute the determination of the amount of restitution. The court may modify the amount, on its own motion or on the

surviving family of the actual victim, in this case, Ms. Wright[7] (Former § 1202.4, subd. (k).) The statute also provided that "economic loss" included the value of stolen or damaged property, medical expenses and lost wages or profits.[8] (Former § 1202.4, subd. (f)(1)–(4).)

### 1. *Payments Made by Ms. Wright's Insurance Carrier*

■ The trial court's references to excluding "deductibles" from Ms. Wright's damages indicates that it took into account payments made by Ms. Wright's insurer for Hill's medical payments. The trial court erred in offsetting against Hamilton's restitution obligation payments or reimbursements made by Ms. Wright's insurer for Hill's medical expenses.

In *People v. Hove* (1999) 76 Cal.App.4th 1266, 1272 [91 Cal.Rptr.2d 128] (*Hove*), the court upheld the trial court's order requiring the defendant to pay full restitution for the victim's medical bills, even though Medicare and Medical paid all of the victim's medical expenses. The court said, "[T]he fortuity that the victim here was over age 65, and thus covered by Medicare, should not shield the defendant from a restitution order which requires him to pay the full amount of the losses caused by his crime." (*Id.* at p. 1272.) The court relied on the reasoning of the California Supreme Court in *Birkett, supra,* 21 Cal.4th 226.

In *Birkett, supra,* 21 Cal.4th 226, the Supreme Court considered the impact that reimbursement of losses by a victim's own insurance carrier may have on a defendant's restitution obligation under former section 1203.04. After an extensive review of the legislative history behind both the constitutional and statutory mandates for victim restitution (*Birkett,* at pp. 230–245), the court held that restitution awards cannot be split between the victim and the insurer that had partially reimbursed the victim. The court reasoned as

---

motion of the district attorney, the victim or victims, or the defendant. If a motion is made for modification of a restitution order, the victim shall be notified of that motion at least 10 days prior to the proceeding held to decide the motion.

"(2) Determination of the amount of restitution ordered pursuant to this subdivision shall not be affected by the indemnification or subrogation rights of any third party. Restitution ordered pursuant to this subdivision shall be ordered to be deposited to the Restitution Fund to the extent that the victim, as defined in subdivision (k), has received assistance from the Victims of Crime Program pursuant to Article 1 (commencing with Section 13959) of Chapter 5 of Part 4 of Division 3 of Title 2 of the Government Code . . . ." (§ 1202.4, subd. (f)(1) and (2).)

[7] The statutory definition of "victim" now includes, in addition to the actual victim's immediate surviving family, other legal, governmental or commercial entities that are direct victims of a crime, as well as "derivative victims," as defined in Government Code section 13960. (§ 1202.4, subd. (k)(1).)

[8] The statutory definition of "economic loss" has been expanded. It still includes the value of stolen or damaged property, medical expenses and lost wages or profits. (§ 1202.4, subd. (f)(3)(A)–(K).)

follows: "[T]he Legislature intended to require a probationary offender,[9] for rehabilitative and deterrent purposes, to make full restitution for all 'losses' his crime had caused, and that such reparation should go entirely to the individual or entity the offender had directly wronged, regardless of that victim's reimbursement from other sources. Only the Restitution Fund was eligible to receive any part of the full restitutionary amount otherwise due to the immediate victim. [¶] Thus, except as against the Restitution Fund, the immediate victim was entitled to receive from the probationer the full amount of the loss caused by the crime, regardless of whether, in the exercise of prudence, the victim had purchased private insurance that covered some or all of the same losses. . . ." (*Id.* at p. 246, italics omitted.)

Under these authorities, Hamilton should not have his restitution obligation reduced by payments to Ms. Wright by her insurer. (See also *In re Brittany L.* (2002) 99 Cal.App.4th 1381, 1389 [122 Cal.Rptr.2d 376] [victims "entitled to a restitution order [under Welf. & Inst. Code, § 730.6 for juveniles] in an amount sufficient to 'fully reimburse' them for losses incurred as a result of appellant's criminal conduct—without regard to potential reimbursement from their homeowners' insurance carrier"].)

### 2. *Payments Made by Ms. Hamilton's Insurance Carrier*

In determining whether Ms. Wright incurred economic loss entitling her to restitution under former section 1202.4, the trial court reduced the amount of that loss by the amount paid by Ms. Hamilton's insurer to settle Hill's civil action against Ms. Hamilton and defendant. When instructing Ms. Wright to calculate her "out of pocket" expenses, the trial court told her to deduct the $30,000 settlement paid by Ms. Hamilton's insurer. Hamilton argues that the deduction was proper under *People v. Bernal* (2002) 101 Cal.App.4th 155 [123 Cal.Rptr.2d 622] (*Bernal*).

In *Bernal, supra,* 101 Cal.App. 4th 155, the court held that payments made by the defendant's insurer to settle the victim's civil action against the defendant must be offset against the defendant's victim restitution obligation for losses covered by the restitution order. (*Id.* at pp. 165–168.) The court distinguished *Birkett* and *Hove* as involving sources of victim reimbursement that were "completely distinct and independent from the defendants." The court noted that payments in *Birkett* were made by the victim's insurer and in *Hove* by Medi-Cal, and as such were simply "fortuitous events from which the defendants should not benefit." (*Bernal,* at p. 166.) The *Bernal* court reasoned

---

[9] The restitution statute in effect at the time of Hamilton's crime was not limited to probationary offenders. Amendments to the statute after *Birkett, supra,* 21 Cal.4th 226, indicate the Legislature intended the same rehabilitative and deterrent purposes to apply to non-probationary offenders as well. (Stats. 1995, ch. 313, § 5; Pen Code, § 1202.4, subd. (a)(1).)

that payments by a defendant's insurer were different from other sources of reimbursement because (1) unlike payments from other third party sources, payments to the victim by the defendant's insurance are not fortuitous, but bargained for because the defendant procured the insurance; (2) the defendant paid the policy premiums; (3) the defendant had a contractual right to have the payments made to the victim on his behalf; and (4) the insurance company has no right of indemnity or subrogation against the defendant. (*Id.* at p. 168.)

*Bernal, supra,* 101 Cal.App.4th 155, is distinguishable from the instant case. Payments here were made, not by Hamilton's insurer, but by a source completely distinct and independent from Hamilton—namely, his mother's insurer. Unlike the situation in *Bernal,* Hamilton did not procure or maintain the insurance, had no contractual right to require payments to be made on his behalf, and was potentially subject to an indemnity claim by the insurer.[10] Ms. Wright's receipt of any payment is due to two fortuitous events: Ms. Hamilton's procuring insurance coverage and the insurance policy covering Hamilton's acts. Hamilton should not benefit from these circumstances. (*Birkett, supra,* 21 Cal.4th at p. 246; *Hove, supra,* 76 Cal.App.4th at pp. 1273–1274; *People v. Clifton* (1985) 172 Cal.App.3d 1165, 1168 [219 Cal.Rptr. 904] (*Clifton*).)

Moreover, the conclusion in *Bernal, supra,* 101 Cal.App.4th 155, is inconsistent with the following language in *Clifton, supra,* 172 Cal.App.3d 1165: "while restitution collected pursuant to [former] Penal Code section 1203.04[11] is to be credited, by the terms of the statute, to any civil judgment obtained by the victim, the statute does not conversely authorize credit from a civil settlement to the amount payable pursuant to a restitution order in a criminal case. . . . Aside from compensating an individual for injuries suffered, restitution may also serve the salutary purposes of deterring future criminality and impressing upon a criminal offender that he must accept responsibility for his crime. . . ." (*Id.* at p. 1168.)

The court in *Bernal, supra,* 101 Cal.App.4th at page 167, distinguished *Clifton, supra,* 172 Cal.App.3d 1165, as dealing "with the question of whether the trial court had statutory *authority* to order restitution after the victim settled with and released the defendant's insurance company. . . . *Clifton* was not specifically concerned with whether any portion of the prior settlement would offset the subsequently entered restitution order. Although *Clifton*

---

[10] There is no indication that such an indemnity claim had been made. Thus, we need not address the effect of a defendant's indemnification of an insurer that had paid the victim.

[11] Former section 1202.4 also required that restitution paid pursuant to the statute be credited to any other judgment for the same losses obtained against the defendant arising out of the defendant's crime. (Stats. 1995, ch. 313, § 5; Pen. Code, § 1202.4, subd. (h).)

contains language suggesting that there should be no offset, that language was mere dictum." (*Bernal, supra,* 101 Cal.App.4th at p. 167.) We need not resolve the question of whether a payment by a defendant's insurer can be an offset to a restitution order because here the payment was not by the defendant's insurer.

In *People v. Salas* (Colo.Ct.App. 2002) 42 P.3d 68 (*Salas*), overruled in part on another ground in *People v. Kennaugh* (Colo. 2003) 80 P.3d 315, a Colorado case, the facts are similar to those presented here. In *Salas,* the defendant pleaded guilty to assaulting the victim in a restaurant and was ordered to pay victim restitution as required by a statute. (Colo. Sess. Laws 1996, ch. 288, at 1778; Colo. Rev. Stat. § 16-11-204.5.) The victim filed a civil action against both the defendant and the restaurant but subsequently dropped her claims against the defendant and settled with the restaurant for $60,000. The defendant sought to offset the settlement proceeds the victim received from the restaurant against the defendant's victim restitution obligation pursuant to a statutory requirement that the court offset against the restitution obligation funds recovered by the victim in a civil proceeding from or on behalf of the defendant. (*Salas,* at p. 69; Colo. Sess. Laws 1998, ch. 112, at 669; Colo. Rev. Stat. § 16-11-101.5.) The court concluded that no portion of the victim's settlement with the restaurant was paid by or on behalf of the defendant and allowed no offset. (*Salas,* at pp. 69–70.)

Here, as in *Salas,* there is no evidence that the settlement paid by Ms. Hamilton's insurer was made on Hamilton's behalf. The evidence is to the contrary. The settlement and release agreement signed by Hill expressly releases Ms. Hamilton; it does not mention Hamilton except in the caption in Hill's civil case against Hamilton and his mother. A letter from Ms. Hamilton's insurer dated March 27, 2002, transmitting to her a copy of the signed release, states: "Pursuant to your request, enclosed are copies of the signed release, dismissal and settlement check we issued to resolve the claim made against you by Donald Hill." Finally, a letter from Ms. Hamilton's attorney advising her of Hill's agreement to settle his action against her states: "I am happy to advise that the Offer to Compromise in the amount of $30,000 has been accepted which will release and dismiss you from this lawsuit. We were also able to extricate your son, Eric, with respect to the civil action, obtaining a Request for Dismissal with Prejudice. However, it is not within our power or authority to have a Release made on Eric's behalf, given the prior restitution orders in the criminal matter . . ." Because the settlement paid by Ms. Hamilton's insurer was made on her behalf, and not directly on behalf of Hamilton, it cannot be offset against Hamilton's victim restitution obligation.

### 3. *Amount of Restitution*

The People contend that because the trial court erroneously considered payments by Ms. Wright's insurer as an offset, it failed to inquire into the full extent of Ms. Wright's economic loss and should do so upon remand. Hamilton asserts that such reconsideration is unnecessary because the trial court already ascertained the amount of Ms. Wright's losses.

The trial court gave Ms. Wright the opportunity to present evidence that her expenses exceeded $15,000 and that if she did not do so, the trial court would conclude that "it's over and done with." The record does not show that Ms. Wright presented any further evidence. That the trial court offset insurance payments against $15,000 suggests it concluded that $15,000 was the proper amount of the restitution. There is no indication in the record to the contrary. Moreover, the $15,000 amount appears to have been part of a negotiated plea. There is no showing of any need for further consideration of the amount of restitution.

### 4. *Conclusion*

Although Ms. Wright may end up with more money than she expended, the result can be justified. The restitution order serves deterrent and punitive goals. In tort law, if an injured party receives compensation for injuries from a source independent of the tortfeasor, the amount of such compensation is not offset against the damage obligation of the tortfeasor (the collateral source doctrine). (*Helfend v. Southern Cal. Rapid Transit Dist.* (1970) 2 Cal.3d 1, 6 [84 Cal.Rptr. 173, 465 P.2d 61] (Tobriner, Acting C. J.). Although "[t]he doctrine has been severely criticized by commentators . . . it is firmly established as the California rule." (6 Witkin, Summary of California Law (9th ed. 1988) Torts, § 1388, p. 857.) There is no reason why that same principle of tort law should not apply to restitution for crime victims.

## DISPOSITION

The matter is reversed and remanded to the trial court to determine the effect of Hamilton's failure to pay restitution without considering any insurance payments as offsets to his restitution obligation.

Turner, P. J., and Armstrong, J., concurred.

Respondent's petition for review by the Supreme Court was denied March 24, 2004.