Filed 2/29/16  P. v. Brown CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>v.<br><br>KYLE KATHRYN BROWN,<br><br>　　　　Defendant and Appellant. | A142758<br><br>(Marin County<br>Super. Ct. No. SC166170A) |

　　　　Defendant Kyle Kathryn Brown appeals an order for restitution entered following her guilty plea to one count of causing injury while driving under the influence of prescription drugs. We find no abuse of discretion and therefore shall affirm the order.

**Factual[1] and Procedural History**

　　　　On May 26, 2009, shortly after 5:00 p.m. while driving on Highway 1, defendant was involved in an accident in which she clipped a bicyclist with the side mirror of her car. The collision caused the victim to fall from her bicycle. While she was lying motionless in the roadway a second car approached, but the driver was able to swerve and avoid hitting the victim. However, the driver of a third vehicle was unable to brake in time and ran over her. The victim sustained substantial injury.

　　　　Defendant pled guilty to one count of driving under the influence of drugs causing injury. (Veh. Code, § 23153, subd. (a).) She was placed on probation and ordered to pay restitution to the victim as a condition of her probation. Following a contested restitution

---

[1] The facts are taken from the probation department presentencing report.

1

hearing, the court ordered $2,239,080 in restitution, offset by $1.6 million defendant and her insurance carrier had already paid the victim, for a balance due of $639,080. Defendant has appealed the restitution order.

## Discussion

Defendant does not challenge the portion of the order that was based on the victim's past and future medical bills, property damage and past lost wages ($303,211). Defendant contends that the court erred in calculating the victim's future lost wages ($1,426,621), attorney fees incurred to collect restitution ($27,100), civil litigation costs ($101,641) and attorney fees incurred in the civil litigation ($380,507).

1.     *Lost Future Wages*

Defendant contends the victim failed to establish an adequate factual basis for the $1,426,621 in lost future wages. There is no dispute that the victim suffered a traumatic brain injury in the accident. She testified that before the accident she was preparing to apply to graduate school to earn a master's degree in business administration. Based on her scores on the practice admissions test, she believed she was a strong candidate for admission to a top tier school. When she took the test after the accident, however, her scores were significantly lower than her practice test scores. Ultimately, she earned her degree from a school that is not ranked in the top 100. Following graduation, she did not obtain employment for approximately eight months and her salary was $65,000 a year. Later, she moved to a job with a $62,000 annual salary. At the time of the hearing, she was working as a contractor making $50 an hour. The victim testified that since the accident she has struggled with an attention deficit concerning the smaller details in her work.

The victim submitted a report prepared by a forensic accountant calculating her lost future wages based on various factual scenarios. The court based its order on the scenario yielding the lowest loss calculation, which projected pre-injury earnings of $4,838,720, post-injury earnings of $3,412,109, and income loss of $1,426,621. The accountant estimated that absent the accident and having attended a top tier business

2

school, the victim's annual income would have been $110,656 per year from 2013 to 2017, $124,755 in 2018, and $153,379 from 2019 forward. The report estimates that, having suffered the brain injury and not attended a top tier business school, the victim's future earnings will be $59,862 from 2013 to 2017, $76,624 in 2018, and $110,566 from 2019 forward.[2]

Defendant contends there is no substantial evidence to support the court's restitution order. Defendant argues, "the underlying premise of [the accountant's] opinion that [the victim's] projected earnings in 2013 through 2017 would be $59,862 was factually incorrect because she had already worked at positions that paid her $65,000 and $62,000 yearly. The stale report . . . was prepared on September 27, 2011. By the June 6, 2014 hearing date almost three years later, [the victim] had already exceeded and surpassed [the accountant's] factually incorrect assumptions. The expert opinion assumed incorrect facts contrary to the proof which did not constitute substantial evidence." We disagree. The report estimated that the victim's income would grow from $59,862 in 2013 to $76,624 in 2018. The fact that her actual earnings are within the range estimated by the accountant supports rather than undermines the reliability of the report.

Defendant also contends the order must be reversed because she did not actually and proximately cause the victim's economic losses. (See *People v. Jones* (2010) 187 Cal.App.4th 418, 425 [restitution order must "fully reimburse the victim or victims for every determined economic loss incurred *as the result of* the defendant's criminal conduct," meaning that defendant's criminal conduct actually and proximately causes the victim's loss.].) Defendant argues that in entering her plea she admitted only to causing

---

[2] The accountant's assumption that the victim would likely have been admitted to a top tier business school is based on the opinion of the vocational consultant who evaluated the victim in 2011. The vocational consultant's opinion that the victim would have been able to attend a top tier business school had she not suffered the brain injury was based on her graduation from high school with above a 4.0 grade point average and standardized testing results above the 80th percentile, her graduation from University of California, Berkeley with a 3.5 grade point average and her postgraduate work experience. In contrast, her standardized test scores following her accident placed her in the 42nd percentile, which did not qualify her for admission to a top tier school.

injury, not great bodily injury, that her "personal conduct was not sufficient to produce the [victim's] great bodily injuries," and that "[t]he causal link between [her] conduct and the results to [the victim] was too attenuated." She also argues that the driver who ran over the victim was an independent, superseding cause that "exonerates and absolved defendant of liability." However, defendant unquestionably was the actual cause of the victim's loss; she would not have been injured had the defendant not knocked her off her bicycle. And, contrary to defendant's suggestion, there is a sufficient connection between her criminal conduct (driving while under the influence and causing the accident) and the victim's injuries. (See *Paroline v. United States* (2014) 134 S.Ct. 1710, 1719 [proximate cause "is 'a flexible concept,' [citation] that generally 'refers to the basic requirement that . . . there must be "some direct relation between the injury asserted and the injurious conduct alleged" ' "].) The fact that the victim was run over by a car traveling behind defendant's car is not an " 'unreasonable . . . extraordinary and abnormal occurrence, which rises to the level of an exonerating, superseding cause.' " (*People v. Jones*, *supra*, 187 Cal.App.4th at p. 427.) It is entirely foreseeable that a person caused to fall onto a busy highway may be struck by on-coming traffic. There was no error in finding that the victim suffered economic loss "as a result of" the defendant's criminal conduct.

Contrary to defendant's next argument, the court did not abuse its discretion in failing to reduce the restitution order based on principles of comparative negligence. We need not evaluate the method by which defendant calculates the responsibility of the driver who ran over the victim as 40 percent. Having pled guilty to causing injury while driving under the influence of drugs, defendant has admitted responsibility for the victim's losses. (*People v. Madrana* (1997) 55 Cal.App.4th 1044, 1051.) "[S]he is therefore 'culpable' and is responsible for the full amount of the victim's losses." (*Ibid.*, quoting *People v. Zito* (1992) 8 Cal.App.4th 736, 746 [obligation to pay restitution does not hinge upon the culpability of codefendant].)

In view of well-settled law, defendant makes no suggestion that the amounts the victim has recovered from the driver of the car that ran her over ($1.25 million), from the property owners ($20,000), or the undisclosed sum recovered from the state should be

4

applied to reduce the amount of her restitution obligation. (See, e.g., *In re Tommy A.* (2005) 131 Cal.App.4th 1580; *People v. Hamilton* (2003) 114 Cal.App.4th 932.) She does contend that the amount of restitution calculated by the trial court does provide a windfall to the victim, but the court's approach is rationally related to the expenses the victim incurred as a result of her injuries. (*People v. Akins* (2005) 128 Cal.App.4th 1376, 1382 ["In determining the amount of restitution, all that is required is that the trial court 'use a rational method that could reasonably be said to make the victim whole, and may not make an order which is arbitrary or capricious.' "].) The evidence that the victim has sufficiently recovered from the accident to participate in triathlons does not disprove the evidence that she continues to suffer the effects of her brain injury and will continue to suffer long term economic loss as a result of the accident. The fact that defendant is elderly and her health has deteriorated since the accident does not impact the victim's losses or demonstrate an abuse of discretion. [3] While defendant's rehabilitation and deterrence of criminality are legitimate purposes of a restitution order, the asserted absence of a need for deterrence or rehabilitation does not justify denial of restitution for a victim's actual loss.

2.     *Litigation Costs and Attorney Fees*

A crime victim is entitled to restitution for "[a]ctual and reasonable attorney's fees." (§ 1202.4, subd. (f)(3)(H).) The trial court ordered restitution of $380,507 in attorney fees incurred in the civil litigation, $101,641 in costs incurred in the civil litigation, and $27,100 in attorney fees incurred in the restitution proceedings.

---

[3] We summarily reject defendant's argument that the restitution order was excessive under the Eighth Amendment or violated her due process rights under the Fourteenth Amendment. Because victim restitution is not considered punishment it is not subject to the excessive fines clause of the Eighth Amendment. (*United States v. Bajakajian* (1998) 524 U.S. 321, 327-328; *People v. Harvest* (2000) 84 Cal.App.4th 641, 649-650.) More importantly, as discussed above, the amount of restitution is not excessive given the severity of the victim's injuries and the rational relationship between the defendant's conduct and the victim's loss.

Defendant contends first that the court abused its discretion by calculating the amount of restitution for the attorney fees incurred in the civil litigation based on the contingency fee paid to her attorney rather than the loadstar calculation method. In *People v. Taylor* (2011) 197 Cal.App.4th 757, 762, the court rejected the argument that the trial court abuses its discretion in ordering restitution based on a contingency fee. The court emphasized that "the 'primary purpose of victim restitution is to fully reimburse the victim for his or her economic losses' " (*id*. at p. 763) and concluded that "[s]ince a victim will likely have to pay a contingent fee in any personal injury action resulting from the crime, evidence that the victim incurred the contingent fee is prima facie evidence of a loss entitling him to compensation" (*id*. at p. 764). The court observed that the fact that a "contingency fee is likely to be higher than an hourly fee for equivalent work" does not render restitution of the full amount unreasonable. (*Id*. at pp. 763-764 [noting that 33.3 percent of the total award is the typical amount paid under a contingency fee contract].) " '[A] wrongdoer in criminal cases as in civil torts takes his victim as he finds him.' [Citation.] If a defendant feels the victim is seeking restitution for unreasonable attorney fees, he may present argument and evidence supporting his position. However, where there is uncontradicted evidence the victim incurred attorney fees as a result of the defendant's actions, it is not an abuse of discretion to award restitution for the fee without resorting to the lodestar method." (*Id*. at p. 764.) Here, defendant does not dispute that the victim actually incurred the contingency fee in the civil litigation. Instead, she argues that the victim did not present any evidence to establish that the fee was reasonable and that "the evidence was to the contrary because [defendant's] insurance company immediately offered the full limit of $1,500,000.00 and her attorney sued to obtain another $100,000." The victim's evidence that she actually incurred the fee, which fell within the range of typical contingency fee percentages, established her right to restitution of the full amount paid. The court reasonably rejected defendant's claim that the amount of the fee was unreasonable. [4]

---

[4] Defendant's argument that the court ordered her to pay restitution of costs and fees

**Disposition**

The restitution order is affirmed.

 

_____

Pollak, Acting P.J.


We concur:


_____

Siggins, J.


_____

Jenkins, J.


---

incurred by the victim in pursuing claims against other civil defendants is not supported by the record. As defendant notes, the victim's attorneys submitted declarations stating that the victim's "claim for attorneys' fees and cost arising out of the prosecution of her civil case against Kyle Brown is limited to those fees and cost that are specific to [the victim's] case against Brown. [She] has not included a request for attorneys' fees and costs arising out of the prosecution of other civil defendants, except to the extent that costs were incurred in connection with the case that jointly prove claims against multiple defendants. For example, all the fees and costs associated with proving the nature and extent of [the victim's] injuries are necessary to prove her civil claims against Brown as well as all of the civil defendants." The fact that there was some overlap between the work performed on the different cases does not support defendant's claim that those attorney fees must be apportioned. (Cf. *Reynolds Metal Co. v. Alperson* (1979) 25 Cal.3d 124, 129-130; *Abdallah v. United Savings Bank* (1996) 43 Cal.App.4th 1101, 1111.)