Filed 08/11/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| ANDREW WILLIAMSON, Plaintiff and Appellant, v. GENENTECH, INC., et al., Defendants and Respondents. | A164426 (San Mateo County Super. Ct. No. 19-CIV-01022) |

The question in this case is whether a plaintiff who lacks standing under California's unfair competition law (Bus. & Prof. Code, § 17200 et seq.)[1]—because he suffered no economic injury caused by the alleged unfair practices (§ 17204)—can establish standing by borrowing an economic injury from his insurer. The plaintiff asks us to extend the collateral source rule, under which a tortfeasor must fully compensate a victim and cannot subtract compensation the victim may have received from their insurer or other collateral source. (*Helfend v. Southern California Rapid Transit Dist.* (1970) 2 Cal.3d 1, 6 (*Helfend*).) We agree with the trial court that the collateral source rule does not apply; the plaintiff lacks standing under section 17204. The trial court properly sustained the defendants' demurrer without leave to amend.

---

[1] Undesignated statutory references are to the Business and Professions Code.

1

## BACKGROUND

### A.

Defendants Genentech, Inc. and Genentech USA, Inc. are pharmaceutical companies that manufacture and sell Rituxan, which is a drug used to treat leukemia and lymphoma. Rituxan is sold in single-use vials. After plaintiff Andrew Williamson was diagnosed with follicular lymphoma, he was treated with Rituxan beginning in 2016.

Williamson later sued Genentech, on behalf of himself and a putative class of similarly situated individuals, alleging that Genentech violates the unfair competition law by selling Rituxan (and three other medications) in excessively large single-use vials.

In his operative (third amended) complaint, Williamson alleges that, because the appropriate dosage varies based on a patient's body size, Genentech's vial sizes are too large for most patients. He insists Genentech should be required to offer smaller vial sizes (of all four medications) to reduce waste of expensive medicine. In addition to injunctive relief, Williamson seeks restitution—to recover the amount the class spent on wasted Rituxan (in addition to wasted amounts of three other medications). However, Williamson alleges that he took only Rituxan, not the other three medications, and that, to do so, he paid a $231.15 deductible. He admits that "[a]ll remaining payments" were made by his health insurer, Blue Cross and Blue Shield of Kansas City (Blue Cross).

### B.

Genentech filed a demurrer, asserting that Williamson lacks statutory standing (§ 17204) because—as Williamson would have paid the same deductible ($231.15) even if Genentech made smaller vials available—he alleges no economic injury caused by its packaging practices.

2

In his opposition, Williamson conceded that he would have paid the same out-of-pocket deductible ($231.15) even if Genentech had made smaller vials. However, he insisted that he has standing because the collateral source rule allows him to recover (as restitution) the amount his insurer (Blue Cross) paid for wasted medicine. Alternatively, Williamson sought leave to amend the complaint so that he could "locate and add a new class representative."

The trial court sustained Genentech's demurrer without leave to amend and entered a judgment of dismissal in its favor.

## DISCUSSION

### A.

Williamson argues that the trial court erred by declining to apply the collateral source rule to the standing question. After independently reviewing Williamson's complaint and the applicable law (*Mathews v. Becerra* (2019) 8 Cal.5th 756, 768), we conclude the trial court did not err.

### 1.

Unfair competition actions may be brought by a public prosecutor or a private person. (§ 17204.) However, the statute limits private standing to "a person who has suffered injury in fact and has lost money or property as a result of the unfair competition." (*Ibid.*)

Our Supreme Court has construed this language to mean that a plaintiff must "establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*" and demonstrate that the economic injury was caused by the unfair business practice that is the subject of their claim. (*Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 322, 326 (*Kwikset*).) In using the phrase "injury in fact," the statute incorporates the established meaning from federal law. (*Id.* at p.

3

322.)  Injury in fact, as required for federal standing under article III, section 2 of the United States Constitution, is an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not " 'conjectural' " or " 'hypothetical.' "  (*Kwikset,* at p. 322.)  " 'Particularized' " means simply that the injury must affect the plaintiff in a personal and individual way.  (*Id.* at p. 323.)

"[E]conomic injury is itself a form of injury in fact, [so] proof of lost money or property will largely overlap with proof of injury in fact. . . . Because the lost money or property requirement is more difficult to satisfy than that of injury in fact, for courts to first consider whether lost money or property has been sufficiently alleged or proven will often make sense.  If it has not been, standing is absent and the inquiry is complete."  (*Kwikset, supra,* 51 Cal.4th at p. 325.)  "There are innumerable ways in which economic injury from unfair competition may be shown.  A plaintiff may (1) surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have; (2) have a present or future property interest diminished; (3) be deprived of money or property to which he or she has a cognizable claim; or (4) be required to enter into a transaction, costing money or property, that would otherwise have been unnecessary."  (*Id.* at p. 323.)

**2.**

The obvious problem here is that Williamson suffered no injury.  He paid a deductible of $231.15 to obtain Rituxan; his insurer paid the remaining cost.  He concedes that he would have paid the same deductible regardless of the size of Genentech's vials.  Thus, Genentech's alleged unfair business practice—using excessively large vials—has not injured Williamson in any way.  (See *Kwikset, supra,* 51 Cal.4th at pp. 323, 326.)  Williamson does not dispute this point.

Instead, Williamson wants to borrow an injury from somebody else to establish standing, using the collateral source rule. Specifically, he contends that his insurer's overpayment for wasted medication is an economic injury that establishes *his* standing.

It is a creative argument. The collateral source rule concerns the amount of money owed by a tortfeasor to the injured victim: "if an injured party receives some compensation for his injuries from a source wholly independent of the tortfeasor, such payment should not be deducted from the damages which the plaintiff would otherwise collect from the tortfeasor." (*Helfend, supra,* 2 Cal.3d at p. 6.) The rule "embodies the venerable concept that a person who has invested years of insurance premiums to assure his medical care should receive the benefits of his thrift" and that "[t]he tortfeasor should not garner the benefits of his victim's providence." (*Id.* at pp. 9-10.) "The collateral source rule expresses a policy judgment in favor of encouraging citizens to purchase and maintain insurance for personal injuries and for other eventualities. . . . If we were to permit a tortfeasor to mitigate damages with payments from plaintiff's insurance, plaintiff would be in a position inferior to that of having bought no insurance, because his payment of premiums would have earned no benefit. Defendant should not be able to avoid payment of full compensation for the injury inflicted merely because the victim has had the foresight to provide himself with insurance." (*Id.* at p. 10.)

Courts have also invoked the collateral source rule in criminal restitution cases to require a defendant to fully compensate the victim for her injuries, despite insurance payments the victim received. (See, e.g., *People v. Hamilton* (2003) 114 Cal.App.4th 932, 944; Pen. Code, § 1202.4, subds. (a)(1) ["[i]t is the intent of the Legislature that a victim of crime who incurs an economic loss as a result of the commission of a

5

crime shall receive restitution directly from a defendant convicted of that crime"], (f) ["[t]he court shall order full restitution"].)

The collateral source rule has no application here. First, in both tort and criminal restitution cases, the rule applies when a defendant injured a victim, and the issue is simply how much compensation the defendant owes to the victim in light of payments from an insurer or other collateral source. Williamson cites no cases in which the rule applied to a plaintiff who suffered no injury.

Second, several federal district courts have held that the collateral source rule does *not* provide a plaintiff—whose insurer suffered economic injury because of unfair competition—with Article III standing. (See *Williamson v. Genentech, Inc.* (N.D. Cal. Mar. 18, 2020, 19-cv-01840-JSC) [nonpub. opn.] 2020 WL 1281532, at pp. *4-*6; *Krueger v. Wyeth, Inc.* (S.D. Cal. 2019) 396 F.Supp.3d 931, 955, fn. 9; *Lucas v. Breg, Inc.* (S.D. Cal. 2016) 212 F.Supp.3d 950, 964-967 (*Lucas*).) As noted, this is also the threshold for standing under the unfair competition statute. (*Kwikset*, *supra*, 51 Cal.4th at p. 322.) As one federal court observed, "The point of *Helfend* is to ensure that a tortfeasor *who injures another* cannot use insurance payments paid on the injured party's behalf to *mitigate* the damages the tortfeasor otherwise owes. The Court finds nothing in *Helfend* to support the much more expansive proposition that a plaintiff can use insurance monies paid to purchase or rent a product on the plaintiff's behalf as a source of injury on which to seek restitution." (*Lucas, supra*, 212 F.Supp.3d at p. 965, fn. 9, some italics added.) While we are not bound by a federal court's interpretation of state law (*Haynes v. EMC Mortgage Corp.* (2012) 205 Cal.App.4th 329, 335), we agree with this reasoning.[2]

---

[2] Because Article III standing is broader than standing under the unfair competition statute—as the former requires only injury in fact while the latter requires both injury in fact and

6

Third, we reject Williamson's argument that the rule's policy rationale justifies extending it to the scenario here. (See *Helfend, supra,* 2 Cal.3d at p. 10 [collateral source rule is based on "a policy judgment in favor of encouraging citizens to purchase and maintain insurance for personal injuries and for other eventualities"].) Williamson suggests people would be encouraged to buy medical insurance if they could use their insurer's purchase of medication as a source of injury to establish standing for an unfair competition claim. He also argues that, if the rule is not applied, people with insurance will be worse off than people without insurance. He overlooks the fact that people with insurance, like Williamson, are *not* injured, and people without insurance *are* injured. And although it is prudent and socially valuable to buy insurance to cover the risk of personal injuries, we cannot say the same about buying insurance simply to participate in lawsuits.

Regardless of any dubious policy rationale, Williamson ignores the fact that standing under the unfair competition law is defined by statute. (§ 17204.) California voters intended to address perceived abuses of the unfair competition law by changing section 17204 to *narrow* the standing rules to apply only to people who suffered economic injuries. (*Kwikset, supra,* 51 Cal.4th at p. 322; *Hall v. Time Inc.* (2008) 158 Cal.App.4th 847, 853, disapproved on another ground by *Kwikset, supra*, at pp. 332-333.) It is not the courts' role to rewrite the statute to loosen the rules. (See *People v. Leal* (2004) 33 Cal.4th 999, 1008.)

Our holding does not mean a windfall for Genentech or that no one has standing to challenge its practices. We simply hold that a plaintiff like Williamson, who lacks standing because he was not injured, cannot invoke the collateral source rule to

economic injury—we reject Williamson's attempt to distinguish the federal cases. (See *Kwikset, supra*, 51 Cal.4th at pp. 322-324.)

7

borrow an injury from his insurer.  The trial court properly sustained the demurrer.

## B.

Nor did the trial court abuse its discretion in denying leave to amend.  (See *Foundation for Taxpayer & Consumer Rights v. Nextel Communications, Inc.* (2006) 143 Cal.App.4th 131, 135 [standard of review].)

When a demurrer is sustained without leave to amend, we "decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse." (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865.)  The plaintiff bears the burden of demonstrating such a reasonable possibility. (*Schifando v. City of Los Angele*s (2003) 31 Cal.4th 1074, 1081.)

Williamson maintains that courts must liberally allow amendment of pleadings to substitute a plaintiff with standing— regardless of whether the original plaintiff lacked standing to prosecute the action from its inception.  We assume he is right. (See *Branick v. Downey Savings & Loan Assn.* (2006) 39 Cal.4th 235, 243; *CashCall, Inc. v. Superior Court* (2008) 159 Cal.App.4th 273, 287-290.)

Here, Williamson has had three prior opportunities to amend his complaint and more than three years since Article III standing was put at issue.  Nonetheless, Williamson fails to identify any substitute plaintiff, much less describe the nature of that person's claims.  (See *Branick v. Downey Savings & Loan Assn., supra,* 39 Cal.4th at pp. 242-243 [noting that such facts "necessarily inform the superior court's discretionary decision" on leave to amend]; *Foundation for Taxpayer & Consumer Rights v. Nextel Communications, Inc., supra,* 143 Cal.App.4th at pp. 134-136.)  Without such information, Williamson cannot satisfy his burden to show a reasonable possibility he could cure the

complaint's standing defect, and the trial court did not abuse its discretion in denying leave to amend. (See *Cryoport Systems v. CNA Ins. Cos.* (2007) 149 Cal.App.4th 627, 632-633.)

## DISPOSITION

The judgment is affirmed. Genentech is entitled to its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(2).)

_____
BURNS, J.

We concur:

_____
JACKSON, P.J.

_____
CHOU, J.

A164426

San Mateo County Superior Court, No. 19-CIV-01022, Hon. Marie S. Weiner.

Arias Sanguinetti Wang & Torrijos LLP, Mike Arias, Robert M. Partain, and M. Anthony Jenkins, for Plaintiff and Appellant.

Shook, Hardy & Bacon L.L.P, M. Kevin Underhill, for Defendants and Respondents.