Filed 12/13/24  P. v. Porter CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. NATHANIEL DAVID PORTER, Defendant and Appellant. | F087993 (Super. Ct. No. 07CM3809HTA) OPINION |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Kings County.  Valerie R. Chrissakis, Judge.

John P. Dwyer, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the State Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

[*] Before Levy, Acting P. J., Detjen, J. and Peña, J.

## INTRODUCTION

Defendant Nathaniel David Porter appeals from a postjudgment order denying his motion to modify the court's restitution order. Appointed counsel has filed a brief under the authority of *People v. Delgadillo* (2022) 14 Cal.5th 216 (*Delgadillo*), requesting that this court conduct an independent review of the record. Defendant filed a supplemental letter brief challenging the court's restitution award on several grounds.

We have considered defendant's arguments and independently reviewed the record, and we affirm the trial court's order.

## FACTUAL BACKGROUND

We briefly summarize the underlying facts as stated in our opinion in defendant's direct appeal to provide context for the restitution awards at issue in this case.

On December 1, 2007, M.S. went into a gas station convenience store while his girlfriend, K.G., remained outside in M.S.'s pickup truck with the engine running. Two men approached the pickup and told K.G. to get out while one of them held what K.G. believed to be a gun. K.G. got out of the truck and the men drove off. The truck was soon pursued by a pair of California Highway Patrol (CHP) officers. The pickup pulled over and stopped. As the CHP driver exited his patrol car, the passenger door of the pickup opened and the passenger got out, turned to face the patrol car, reached toward his waistband, then fired three to five shots at the officers. The officers took refuge behind their patrol vehicle, which was later found to have bullet holes in the hood. (*People v. Porter* (Oct. 27, 2009, F055715 [nonpub. opn.] (*Porter*).)

The shooter jumped back into the pickup, which then sped away. The officers again pursued. The pickup crashed into a fire hydrant and parked vehicles. A handgun was found in the wreckage. Eric Armendariz, defendant's codefendant, was found hiding in a nearby church. Defendant turned himself in. It was stipulated at trial that defendant was the driver of the pickup at the time Armendariz shot at the officers. (*Porter*, *supra*, F055715.)

2.

## PROCEDURAL HISTORY

On April 29, 2008, defendant was convicted of two counts of attempted murder of a police officer (Pen. Code,[1] §§ 187, subd. (a), 664; counts 1 and 2), carjacking (§ 215; count 7), felony evading (Veh. Code, § 2800.2; count 8), and hit and run with injury (Veh. Code, § 20001, subd. (a); count 9). He was sentenced to an aggregate determinate term of nine years, plus two consecutive terms of life with the possibility of parole. Although the court orally recognized defendant would be eligible for parole after seven years, the abstract of judgment suggested defendant was subject to a 25-year minimum term before becoming eligible for parole. He was ordered to pay direct victim restitution in the amount of $25,048.36 as follows: $3,630 to E.C., $120 to M.C., $830 to R.C., and $200 to J.D. for damage to their respective vehicles and property when the pickup crashed; $17,700 to M.S. for damage to the pickup; and $2,568.36 to the City of Hanford for damage to a fire hydrant. The court also orally ordered restitution to CHP in the amount of $2,500 for vehicle repairs relating to bullet holes to the vehicle. However, this order does not appear in the court's sentencing minute order and is not included in the $25,048.36 restitution award contained in the abstract of judgment. On appeal, this court affirmed. (*Porter*, *supra*, F055715.)

On January 13, 2020, defendant filed a petition for resentencing pursuant to former section 1170.95, now section 1172.6. The trial court summarily denied the petition. Defendant appealed. During the pendency of the appeal, the trial court amended the abstract of judgment to reflect a seven-year minimum term on counts 1 and 2, and to make other technical corrections to conform the abstract of judgment to the court's oral pronouncement. The restitution award was unchanged. Ultimately, this court reversed the denial of the section 1172.6 petition for resentencing and remanded for further proceedings. (*People v. Porter* (2022) 73 Cal.App.5th 644.)

---

[1] Undesignated statutory references are to the Penal Code.

On remand, the trial court conducted further proceedings and eventually granted the petition for resentencing and vacated defendant's attempted murder convictions. On March 1, 2023, the court resentenced defendant to an aggregate term of six years eight months for the remaining convictions. The court orally reimposed the prior restitution obligations, including the $2,500 award to CHP. The amended abstract of judgment included a total restitution award of $27,548.36, which was $2,500 higher than the total award listed in the prior abstract of judgment.

Defendant filed a motion for a restitution hearing. While that request was pending, the trial court received a letter from the Department of Corrections and Rehabilitation, pointing out that defendant was erroneously sentenced to a middle term of six years on count 7, for which the applicable sentencing triad mandates a term of either three, five, or nine years. Accordingly, on April 5, 2023, the trial court resentenced defendant to an aggregate sentence of five years eight months.

At the April 5, 2023 resentencing hearing, the parties stipulated to eliminating the $2,500 award of restitution to CHP because defendant's attempted murder convictions were vacated. The remaining restitution obligations were reimposed in the amount of $25,048.36. Defense counsel pointed out defendant had been incarcerated for 16 years but was being resentenced to a much shorter term, and asked that his excess custody credits be applied to his fines. The court deemed any fines paid but explained that excess custody credits could not be used to lessen direct victim restitution. Defense counsel also argued that some of the victims had received insurance payments for their damages but the record did not establish the actual value of the victims' losses. The court set the matter for a restitution hearing to address defendant's motion.

A restitution hearing was conducted on April 11, 2024. Defendant acknowledged that he caused damage to various vehicles and property while driving the suspect vehicle but argued that this was because his codefendant, Armendariz, told him to drive. Had Armendariz not done so, defendant asserted, he likely would have stopped driving.

4.

Moreover, because defendant was out of custody by the time of the hearing, he was earning wages that were being garnished and therefore was unfairly paying restitution at a higher rate than Armendariz, who remained incarcerated. He asked that restitution be split evenly, rather than being ordered jointly and severally. He again asked that the court apply time credits to the direct victim restitution. Additionally, he raised questions regarding having to pay restitution for damages that insurance had covered. Ultimately, the court denied defendant's requests and ordered defendant's restitution obligation to run jointly and severally with that of Armendariz in the amounts previously stated, with the exception of restitution to CHP, which was omitted.

## DISCUSSION

### I.      *Delgadillo* Procedure

In *People v. Wende* (1979) 25 Cal.3d 436, our Supreme Court held that "Courts of Appeal must conduct a review of the entire record whenever appointed counsel submits a brief on direct appeal which raises no specific issues or describes the appeal as frivolous." (*Delgadillo*, *supra*, 14 Cal.5th at p. 221.) The *Wende* procedure applies "to the first appeal as of right and is compelled by the constitutional right to counsel under the Fourteenth Amendment of the United States Constitution." (*Ibid.*)

In *Delgadillo*, the Supreme Court held that the *Wende* independent review procedure is not constitutionally required in an appeal from a postconviction order denying a section 1172.6 petition for resentencing because the denial does not implicate a defendant's constitutional right to counsel in a first appeal as of right. (*Delgadillo*, *supra*, 14 Cal.5th at pp. 222, 224–226.) The court further found that general due process principles regarding fundamental fairness do not compel a *Wende* independent review of the order. (*Id.* at pp. 229–232.) However, if a no-issues brief is filed in such an appeal and the defendant then "files a supplemental brief or letter, the Court of Appeal is required to evaluate the specific arguments presented in that brief and to issue a written opinion." (*Id.* at p. 232.) The reviewing court is not required to conduct "an independent

5.

review of the entire record to identify unraised issues" but may do so at its discretion. (*Ibid.*)

Delgadillo addressed the application of *Wende*'s review procedures in the context of an order denying postconviction relief under section 1172.6. (*Delgadillo*, *supra*, 14 Cal.5th at p. 231, fn. 5 ["In this case, we are not deciding *Wende*'s application to other postconviction contexts, which may present different considerations."]) However, the order at issue here is a postconviction order entered after a judgment following resentencing pursuant to section 1172.6. It therefore is not apparent that *Delgadillo*, rather than *Wende*, sets forth the applicable procedures. Regardless, we have considered the arguments defendant raises in his supplemental brief and have exercised our discretion to independently review the record. We conclude none of defendant's contentions have merit and we find no arguable error that would result in a disposition more favorable to defendant.

## B.      Application of Excess Custody Credits to Direct Restitution

Defendant argues he is entitled to application of excess custody credits against his direct victim restitution obligation. Defendant is incorrect.

Section 2900.5 requires that time in custody be credited to the defendant's term of imprisonment or "credited to any base fine that may be imposed."[2] (§ 2900.5, subd. (a).) However, direct victim restitution is not a fine. To the contrary, "California law provides for two types of restitution:  direct restitution to the victim (Pen. Code, § 1202.4, subd. (f)), which is based on a direct victim's loss, and a restitution fine (Pen. Code, § 1202.4, subd. (b)), which is not." (*People v. Dueñas* (2019) 30 Cal.App.5th 1157, 1169.) "Payment of direct victim restitution goes directly to victims and compensates them for economic losses they have suffered because of the defendant's crime." (*Ibid.*)

---

[2] At the time defendant committed the offenses, section 2900.5 similarly provided for credit of excess custody time to apply "to any fine . . . including, but not limited to, base fines and restitution fines." (§ 2900.5, former subd. (a).)

Meanwhile, restitution fines under subdivision (b) of section 1202.4 "are set at the discretion of the court in an amount commensurate with the seriousness of the offense and within a range set by statute," and "are not paid to the victim of the crime." (*Dueñas*, at p. 1169.)

Because direct victim restitution is not a fine, section 2900.5 does not permit the court to apply excess custody credits to direct victim restitution.

### C. Joint and Several Restitution Order

Defendant challenges the court's order of joint and several restitution because, according to defendant, the court failed to apply a "but for" causation test to determine whether defendant was solely responsible for the harm suffered by the victim. We conclude the court did not abuse its discretion in ordering restitution to run jointly and severally.

At the time defendant committed the offenses,[3] section 1202.4 provided, as it does now, that a court must order a defendant to pay restitution "in every case in which a victim has suffered economic loss as a result of the defendant's conduct." (§ 1202.4, subd. (f); see *id.*, subd. (f)(3).) "This provision contains a causality requirement: a defendant sentenced to state prison may be obligated to pay restitution only for losses stemming from the criminal conduct of which he or she was convicted. [Citation.] A defendant may be held jointly and severally liable for losses for which a codefendant bears more culpability [citation], but the criminal conduct of which the defendant was convicted must be at least *a substantial factor* in causing the victim's loss [citation]." (*People v. Selivanov* (2016) 5 Cal.App.5th 726, 786, italics added.) " ' "The substantial factor standard is a relatively broad one, requiring only that the contribution of the individual cause be more than negligible or theoretical." [Citation.] Thus, "a force which

---

[3] The restitution law in effect on the date of the offenses applies in this case. (*People v. Birkett* (1999) 21 Cal.4th 226, 247.)

plays only an 'infinitesimal' or 'theoretical' part in bringing about injury, damage, or loss is not a substantial factor" [citation], but a very minor force that does cause harm is a substantial factor [citation].' " (*People v. Holmberg* (2011) 195 Cal.App.4th 1310, 1321–1322.) Contrary to defendant's assertion, the applicable standard does not predicate joint and several restitution liability on a finding that the defendant's actions were the *only* cause of the victim's injuries.

The award of joint and several restitution liability was within the court's discretion in this case. The parties stipulated at trial that defendant was the driver of the pickup when it crashed, causing the damages for which restitution was ordered. Additionally, defendant was convicted of the criminal conduct – carjacking and felony evading – that resulted in these losses. (See *People v. Pierce* (2015) 234 Cal.App.4th 1334, 1336–1337 [court did not err in ordering a defendant convicted of home invasion robbery to pay restitution, under § 1202.4, subd. (f), to the owner of a stolen car, utility companies, and a separate homeowner who suffered losses when a fleeing codefendant crashed the stolen car into a telephone pole].) Defendant's conduct was neither a negligible nor theoretical contributor to the victims' losses, but rather a substantial contributing factor. Accordingly, the trial court had discretion to hold defendant and Armendariz jointly and severally liable for the victim restitution award. (*People v. Leon* (2004) 124 Cal.App.4th 620, 622 ["[I]f two defendants convicted of the same crime caused a victim to suffer economic loss, a court may impose liability on each defendant to pay the full amount of the economic loss, as long as the victim does not obtain a double recovery."].) The court did not abuse its discretion in ordering restitution to run jointly and severally.

### D.    Losses Covered by the Victim's Insurance Company

Defendant contends he should not have to pay restitution for losses that were covered by the victim's insurance company. Defendant is incorrect.

As stated, former section 1202.4 governs defendant's restitution obligations in this case. At the time defendant committed the offenses, that section provided, in relevant

part: "[I]n every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court." (§ 1202.4, former subd. (f).) The court was required to order restitution in "a dollar amount that is sufficient to *fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct . . . .*" (§ 1202.4, former subd. (f)(3), italics added.) Section 1202.4 expressly provides that "[d]etermination of the amount of restitution ordered pursuant to this subdivision shall not be affected by the indemnification or subrogation rights of any third party." (§ 1202.4, former subd. (f)(2).)

Taken together, these provisions do not permit a reduction of defendant's restitution obligations for losses that were covered by the victim's insurer. (*People v. Birkett*, *supra*, 21 Cal.4th at p. 246; *People v. Hamilton* (2003) 114 Cal.App.4th 932, 940–941.)

### E. Failure to consider ability to pay

Defendant contends the court erred in failing to consider defendant's ability to pay restitution. However, both now and at the time defendant committed the offense, section 1202.4 prohibited courts from considering a defendant's ability to pay in determining the amount of a direct victim restitution order. (§ 1202.4, current and former subd. (g); see *People v. Evans* (2019) 39 Cal.App.5th 771, 776–777.) The court did not err in declining to consider defendant's ability to pay.

### F. Conclusion

Defendant's contentions regarding restitution are without merit. Additionally, we have conducted an independent review of the record and found no arguable error that would result in a disposition more favorable to defendant.

### DISPOSITION

The order is affirmed.