[No. C063113. Third Dist. Aug. 11, 2010.]

THE PEOPLE, Plaintiff and Respondent, v.
STEVE DOUGLAS JONES, Defendant and Appellant.

**COUNSEL**

Robert Navarro, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Charles A. French and Jeffrey D. Firestone, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ROBIE, J.**—In this driving under the influence case, the trial court ordered defendant Steve Douglas Jones to pay victim restitution in the sum of $4,468.40, but in doing so failed to make a clear statement of the calculation method it used to reach that figure. We conclude this failure amounted to an abuse of discretion and accordingly reverse the restitution order and remand the case for further proceedings on the issue of victim restitution. For guidance on remand, we address the application of proximate cause to an award of victim restitution.

## FACTUAL AND PROCEDURAL BACKGROUND

Pursuant to a plea agreement, defendant pled no contest to driving with 0.08 percent or higher blood-alcohol concentration and admitted several prior convictions and that he had a blood-alcohol concentration in excess of 0.20 percent. As part of the agreement, a charge of hit and run (leaving the scene of an accident) was dismissed with a *Harvey*[1] waiver. The court granted defendant probation and ordered him to pay restitution to the victim of the hit and run, Cindy Townsend, in an amount to be determined.

At a later restitution hearing, the victim (now Shipman-Townsend) testified about the restitution she was seeking. Shipman-Townsend and her husband own a construction business working as subcontractors. The damage defendant caused in the hit-and-run accident was to a camper they use in their business. They had spent $11,000 on the camper, but it appeared to Shipman-Townsend that defendant's insurance company was not going to pay to repair it but instead would "total" it and pay her only its Kelley Blue Book value (approximately $4,000), so she sought someone who would repair the camper for less than that.[2] She spent a couple of weeks looking for a repair shop and eventually settled on the man who had sold her the camper, Ron (or Rod) Taylor. Taylor told her he could "probably wrap it up in a couple of months, no problem." Instead, it took him about nine months to complete the repairs.

Because the camper was unavailable for use while it was being repaired, Shipman-Townsend had to pay to stay in motels and eat out instead of using the camper. According to Shipman-Townsend, she had $4,166 in lodging

---

[1] *People v. Harvey* (1979) 25 Cal.3d 754 [159 Cal.Rptr. 696, 602 P.2d 396].

[2] The insurance company ultimately paid for the repair, so the cost of the repair was not part of Shipman-Townsend's restitution claim.

expenses and \$2,177.42 in meal expenses during that period, for a total of \$6,343.42, but she was asking for only half of that amount, or \$3,171.71, as restitution because "cheap motels are about twice as expensive as camping, and eating out is at least twice as expensive as cooking in your own kitchen." Shipman-Townsend also sought \$1,461.12 for wages she had to pay another person to replace her in her business while she was attending four court appearances in the case. She also sought \$892.79 for the cost to repair the bumper on her car, which was torn off one day when she came to court for a hearing and the bumper caught on a "little steel thing" sticking out of the concrete curb at the front of the parking space she was trying to use.[3] And she sought \$81.00 for six hours her secretary spent (at \$13.50 an hour) tracking down and photocopying documents relating to her restitution claim.

The foregoing amounts totaled \$5,606.62. In addition to that amount, Shipman-Townsend sought compensation for having to pay someone to work for her (at \$65.40 per hour) the day before the restitution hearing, which she spent "preparing documents that were demanded by [defense counsel]," and the day of the hearing.

Before hearing argument, the court stated that it thought Shipman-Townsend was "entitled to the [\$]1,461.12" and to "the [\$]65.40" "for today." The court also stated, however, that it "ha[d] a problem with the lodging and the meals" because the repair of the camper "took nine months." The court said that while Shipman-Townsend "cut the figure in half," "[t]he Court doubled the lodging and food figure and then divided it by three months versus nine months to come to what was reasonable." The court stated that it "ha[d] a number" from "add[ing] all these up," but did not say what the number was.

Defense counsel asked the court to consider using two months rather than three months in its calculation because Shipman-Townsend had testified the original estimate for the repair was 60 days ("a couple of months"), not 90 days. The prosecutor argued "you take your victim as you find them." After further argument, the court ordered restitution in the sum of \$4,468.40, commenting that "[y]ou . . . have a duty . . . to mitigate your damages" and

---

[3] Shipman-Townsend testified "[t]here was a little steel thing that had originally pulled, it appeared, that had not been cut flush with the top of the concrete bumper and it was not very visible coming into it. And that got caught on my Saturn when I pulled in—it's rather a tight parking lot even if you're in something small. So I went to back out to pull back in again to do a better parking job, and that tore off my bumper."

that the amount of time it took to fix the camper was "unreasonable in the Court's view." The court did not otherwise explain the calculation method it used to reach that figure.

## DISCUSSION

Subdivision (a)(1) of Penal Code section 1202.4 provides that "[i]t is the intent of the Legislature that a victim of crime who incurs any economic loss as a result of the commission of a crime shall receive restitution directly from any defendant convicted of that crime." Consistent with this intent, subdivision (f) of the statute provides that (with certain exceptions not applicable here) "in every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court. If the amount of loss cannot be ascertained at the time of sentencing, the restitution order shall include a provision that the amount shall be determined at the direction of the court. The court shall order full restitution unless it finds compelling and extraordinary reasons for not doing so, and states them on the record."

On appeal here, defendant contends the restitution order must be reversed for two reasons. First, noting that the trial court "did not identify what part of [the restitution the court ordered] represented the loss from food and lodging expenses," defendant speculates that the court followed the formula it stated tentatively on the record, taking the full amount Shipman-Townsend paid for food and lodging while the camper was unavailable ($6,343.42) (i.e., doubling the figure Shipman-Townsend was claiming as restitution) and dividing it by three (for three months instead of nine months), to arrive at $2,114.47 in restitution for the cost of food and lodging. Then, defendant speculates, the court added the $1,461.12 for wages and $892.79 for the car repair, which results in a total of $4,468.38, which is just two cents off from what the court actually ordered ($4,468.40). Based on this premise, defendant contends the trial court abused its discretion in doubling the figure that Shipman-Townsend sought as restitution for food and lodging.

Second, also based on the foregoing premise of how the court arrived at its restitution figure, defendant contends the trial court erred in ordering him to reimburse Shipman-Townsend for the damage to her car because "the loss had no causal relation to the criminal conduct of which [he] was convicted." Quoting *Benard v. Vorlander* (1948) 87 Cal.App.2d 436, 446–447 [197 P.2d

42], he contends "[e]ither the concrete parking stopper or Shipman-Townsend's driving, or both, were unforeseeable and independent intervening factors whose negligence caused the damage" and thus his "liability in restitution to Shipman-Townsend 'was broken by an efficient intervening cause which did not follow as a natural consequence' of his earlier criminal conduct."

Based on these arguments, defendant contends the total restitution order must be reduced by $1,949.79.

The People contend that "because it cannot readily be determined how the trial court calculated the restitution [it ordered] or what evidence it ultimately based the total amount upon, the matter should be remanded for clarification . . . or for . . . a new restitution hearing."

■ "[W]e review the trial court's restitution order for abuse of discretion. [Citations.] The abuse of discretion standard is 'deferential,' but it 'is not empty.' [Citation.] '[I]t asks in substance whether the ruling in question "falls outside the bounds of reason" under the applicable law and the relevant facts [citations].' [Citation.] Under this standard, while a trial court has broad discretion to choose a method for calculating the amount of restitution, it must employ a method that is rationally designed to determine the surviving victim's economic loss. To facilitate appellate review of the trial court's restitution order, the trial court must take care to make a record of the restitution hearing, analyze the evidence presented, and make a clear statement of the calculation method used and how that method justifies the amount ordered." (*People v. Giordano* (2007) 42 Cal.4th 644, 663–664 [68 Cal.Rptr.3d 51, 170 P.3d 623], fn. omitted.)

Here, the trial court did not make "a clear statement of the calculation method used," as required by *Giordano*. While the court offered some idea of "what [its] thinking [wa]s," it is not *clear* whether the court actually adhered to that "thinking" in reaching the figure it ultimately ordered in restitution.

As defendant points out, the number the court ordered can be reached, within two cents, by adding together: (1) three months' worth of Shipman-Townsend's food and lodging expenses; (2) the cost of wages for a replacement worker for the four court appearances before the restitution hearing; and (3) the cost of repairing the bumper on Shipman-Townsend's car. It is not clear, however, whether this is the calculation method the trial court actually used, since the court stated it thought Shipman-Townsend was also entitled to "the [$]64.50" "for today"—meaning, presumably, the cost of the wages for a replacement worker for the day of the restitution hearing—but the foregoing

calculation does not include any amount for those wages. Also, it is problematic to assume the court used this calculation because there appears to be no logical reason for "doubling" the amount of restitution Shipman-Townsend sought for food and lodging, before reducing the amount to reflect the reasonable length of time the court apparently believed it should have taken to repair the camper, rather than the time it actually took. Essentially Shipman-Townsend admitted she would have spent money on food and lodging expenses even if she had been able to use her camper, and it was her estimate that it cost her twice as much to stay in motels and eat out as it would have cost her to use her camper. If the trial court concluded Shipman-Townsend was entitled to compensation for the additional amounts she had to spend on food and lodging for only three months, rather than nine months, then the court should have divided by three the figure Shipman-Townsend actually sought in restitution for food and lodging—$3,171.71—rather than starting with the entire amount Shipman-Townsend spent on food and lodging during the nine-month period.

It is also problematic to assume the trial court actually used the calculation method defendant postulates because there is no explanation in the record of why the trial court would have denied Shipman-Townsend restitution for the $81 it cost her for her secretary to track down and photocopy documents relating to her restitution claim, as well as restitution for the wages she paid someone to work for her the day before the restitution hearing, which she spent "preparing documents that were demanded by [defense counsel]." As we have noted, subdivision (f) of Penal Code section 1202.4 provides that "[t]he court shall order *full* restitution unless it finds compelling and extraordinary reasons for not doing so, and states them on the record" (italics added), and it appears to us "full" restitution would reasonably include these additional amounts.

As for defendant's argument that the trial court erred in awarding restitution for the cost of repairing Shipman-Townsend's car, which was damaged when she came to court for one of the hearings, because we do not know the calculation method the trial court actually used we cannot say whether the court awarded restitution for the car repair. Thus, we have no occasion to address this claim of error. For guidance on remand, however, we offer the following observations.

■ Although defendant claims "the loss [relating to Shipman-Townsend's car] had no causal relation to the criminal conduct of which [he] was convicted," that is wrong. There are two aspects of causation at play here: cause in fact (also called direct or actual causation), and proximate cause.

"An act is a cause in fact if it is a necessary antecedent of an event." (*PPG Industries, Inc. v. Transamerica Ins. Co.* (1999) 20 Cal.4th 310, 315 [84 Cal.Rptr.2d 455, 975 P.2d 652].) Here, there appears to be no question that defendant's driving under the influence was a cause in fact of the damage to Shipman-Townsend's bumper, because but for the fact that defendant ran into and damaged Shipman-Townsend's camper while driving with in excess of 0.20 percent blood-alcohol concentration, Shipman-Townsend would not have been trying to park at the court on the day the bumper of her car was pulled off.

The question defendant's argument actually raises is whether there is a *proximate* causal connection between his criminal conduct and the damage to the bumper. As our Supreme Court has explained in the context of tort law, "[t]o simply say . . . that the defendant's conduct was a necessary antecedent of the injury does not resolve the question of whether the defendant should be liable. In the words of Prosser and Keeton: '[T]he consequences of an act go forward to eternity, and the causes of an event go back to the dawn of human events, and beyond. But any attempt to impose responsibility upon such a basis would result in infinite liability for all wrongful acts, and would "set society on edge and fill the courts with endless litigation." ' [Citation.] Therefore, the law must impose limitations on liability other than simple causality. These additional limitations are related not only to the degree of connection between the conduct and the injury, but also with public policy. [Citation.] As Justice Traynor observed, proximate cause 'is ordinarily concerned, not with the fact of causation, but with the various considerations of policy that limit an actor's responsibility for the consequences of his conduct.' " (*PPG Industries, Inc. v. Transamerica Ins. Co., supra*, 20 Cal.4th at pp. 315–316.)

■ There is no reason why the various principles involved in determining proximate causation under California tort law should not also apply in awarding victim restitution under California criminal law. As we have noted, under the governing statute, "[t]o the extent possible, [a] restitution order . . . shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred *as the result of* the defendant's criminal conduct . . . ." (Pen. Code, § 1202.4, subd. (f)(3), italics added.) The causal connection embodied in the words "as the result of" is certainly indicative of direct causation. Just as in tort law, however, the law must impose limitations on liability for victim restitution other than simple direct causality or else a defendant will face infinite liability for his or her criminal acts, no matter how remote the consequence.

Only a few cases that we have found have mentioned proximate causation with relation to victim restitution, but in each such case the court actually

addressed direct causation. For example, in *People v. Baumgart* (1990) 218 Cal.App.3d 1207 [267 Cal.Rptr. 534], the defendant challenged an order to pay restitution as a condition of probation for selling securities without a permit because in his view some of the restitution "represent[ed] victims' losses not proximately caused by his criminal conduct, but by the fraudulent scheme of [a] codefendant." (*Id.* at pp. 1210–1211.) In rejecting that argument, the Court of Appeal noted, "it is abundantly clear on our record that [the defendant's] conduct actually caused the losses to the Gomez investors, who invested their money with Gomez as a result of [the defendant's] solicitation." (*Id.* at p. 1223.) The court later reiterated that there was "a direct relationship between the victims' losses and [the defendant's] conduct." (*Ibid.*) Thus, while the defendant in *Baumgart* may have been trying to make an argument about proximate causation—based on the premise that his codefendant's fraudulent scheme was an intervening cause that severed any proximate causal link between his own unpermitted actions and the victims' losses—the Court of Appeal addressed that argument only in terms of direct causation.

Similar to *Baumgart*, but with a different outcome, was *People v. Scroggins* (1987) 191 Cal.App.3d 502 [236 Cal.Rptr. 569]. There, the defendant challenged an order to pay restitution as a condition of probation for receiving stolen property because the order required him "to pay restitution for crimes that he did not commit and for damages not proximately caused by him." (*Id.* at pp. 504–505.) The appellate court agreed, noting that "the trial court ordered Scroggins to pay restitution to burglary victims, whose losses were not connected to Scroggins's crime," but the trial court "did not conclude— nor from this record could it have—that Scroggins was responsible for these other losses that it ordered paid." (*Id.* at p. 506.) Again, while the defendant made an argument phrased in terms of proximate causation, the trial court resolved the issue as a matter of direct causation.[4]

That no published opinion has yet directly applied the principles of proximate causation to victim restitution does not mean those principles do not apply. Indeed, the concept of proximate cause has routinely been applied to other aspects of criminal liability. For example, in *People v. Cervantes* (2001) 26 Cal.4th 860 [111 Cal.Rptr.2d 148, 29 P.3d 225], our Supreme Court

---

[4] The reason for this conflation of the two concepts probably lies in the fact that cause in fact has been referred to as "[o]ne of the concepts included in the term proximate cause." (*Mitchell v. Gonzales* (1991) 54 Cal.3d 1041, 1049 [1 Cal.Rptr.2d 913, 819 P.2d 872].) Thus, a defendant who argues his conduct was not the proximate cause of the complaining party's injuries may be understood to argue, depending on the facts of the case, that he should not be held liable either because his conduct was not a cause in fact of the injuries or because, even though his conduct *was* a cause in fact of the injuries, his conduct should not be considered a proximate cause of the injuries under the various principles that go into determining proximate causation.

confronted "a question concerning proof of proximate causation in a provocative act murder case," specifically, "whether [the] defendant, a member of a street gang, who perpetrated a nonfatal shooting that quickly precipitated a revenge killing by members of an opposing street gang, [wa]s guilty of murder." (*Id.* at pp. 862–863.) In concluding the defendant was not guilty, the court observed (in part) as follows: " 'In general, an "independent" intervening cause will absolve a defendant of criminal liability. [Citation.] However, in order to be "independent" the intervening cause must be "unforeseeable . . . an extraordinary and abnormal occurrence, which rises to the level of an exonerating, superseding cause." [Citation.] On the other hand, a "dependent" intervening cause will not relieve the defendant of criminal liability. "A defendant may be criminally liable for a result directly caused by his act even if there is another contributing cause. If an intervening cause is a normal and reasonably foreseeable result of defendant's original act the intervening act is 'dependent' and not a superseding cause, and will not relieve defendant of liability. [Citation.] '[ ] The consequence need not have been a strong probability; a possible consequence which might reasonably have been contemplated is enough. [ ] The precise consequence need not have been foreseen; it is enough that the defendant should have foreseen the possibility of some harm of the kind which might result from his act.' " ' " (*Id.* at p. 871.)

This discussion of what constitutes an intervening, superseding cause harkens back to defendant's argument here that his "liability in restitution to Shipman-Townsend 'was broken by an efficient intervening cause which did not follow as a natural consequence' of his earlier criminal conduct." Thus it is clear defendant's argument raises an issue of proximate causation. In effect, the question defendant's argument raises is whether, despite the direct causal connection between his criminal conduct and the damage to Shipman-Townsend's bumper, defendant's conduct cannot be considered the proximate cause of the damage because some other cause—for example, Shipman-Townsend's conduct in driving the bumper of her car over the concrete curb—must be deemed an intervening cause that relieves defendant of liability for restitution.

We need not decide this question because the trial court abused its discretion by failing to make a clear statement of the calculation method it used in ordering restitution, and we must reverse the restitution order and remand for the court to make a proper restitution order on a record that includes the required statement. At the time it does so, it will be for the trial court to decide in the first instance, consistent with the principles of proximate causation, whether the restitution order should include the amount Shipman-Townsend paid to repair her car.

## DISPOSITION

The restitution order is reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion.

Raye, Acting P. J., and Cantil-Sakauye, J., concurred.