Filed 7/30/13  P. v. Hatzell CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>TIMOTHY MARK HATZELL,<br><br>        Defendant and Appellant. | A136286<br><br>(Solano County<br>Super. Ct. No. FCR277485) |

Defendant Timothy Mark Hatzell entered a no contest plea to one count of grand theft by embezzlement (Pen. Code, §§ 487, subd. (a), 503).  The trial court placed him on three years' probation on the condition that he serve 90 days in jail and pay restitution to the victim.  After a restitution hearing, the court ordered defendant to pay restitution in the amount of $40,695.  Defendant contends the restitution order is not supported by substantial evidence.  Defendant also contends the trial court abused its discretion by failing to employ a method rationally designed to determine the victim's economic loss, and by failing to make a clear statement of the calculation method used.  We agree the trial court failed to clearly state the methodology underlying its computation of the restitution amount.  Accordingly, we reverse the restitution order and remand for further proceedings.

## I.  PROCEDURAL BACKGROUND & FACTS

According to the probation report, the victim, Carol Rewick, owned the Fleet Feet store in Vacaville.  Defendant was a manager at the store. Rewick reported to police that defendant "used his personal credit card and had falsely credited his account through

fraudulent returns for items that were never purchased." Rewick discovered defendant's embezzlement by noticing a return for $260.10, not accompanied by a receipt and traced it to defendant's credit card.

When confronted by Rewick, defendant admitted he had been embezzling for about a year and promised to make full restitution. Based on his bank records, defendant estimated he had taken about $10,000 in fraudulent returns. He claimed he never took cash. According to the probation report, Rewick estimated her loss to be $6,069.14, and possibly an additional loss of $841.01.

In her victim restitution claim form, Rewick claimed a loss of $70,167.67. At the restitution hearing, the prosecutor represented to the court that defendant had already paid Rewick $10,000.

Rewick testified defendant worked at her store from November 2007 to June 2010. She discovered defendant had used his credit card to make suspicious returns of items which had not been purchased or were not in stock. She confirmed defendant had confessed to her he had been stealing for about a year. Looking back into her records, she was able to identify a number of returns involving defendant's credit card. She also noticed a large number of returns using her employee number, which was "suspicious" because each employee was supposed to use his or her own number for returns. She had six or seven employees working at the store at the same time as defendant.

Rewick had her office manager, Ashley Dobson, examine the records to look for transactions that appeared fraudulent. One indication of fraud was an item returned at a different price from the sale price. Rewick and Dobson prepared a spread sheet, admitted as People's exhibit 1, showing records of specific transactions. Rewick admitted on cross-examination it was difficult to match returned items to her inventory because her inventory "was never quite right" or "was always off."[1]

Exhibit 1 showed certain returns were done when defendant was working, but the exhibit could not directly link the returns to defendant. All the returns were processed

---

[1] The state of the inventory may have been due to defendant.

2

under Rewick's employee number. At the times in question, Fleet Feet had "a pretty loose return policy" and all employees had "full ability to return any product without any kind of signature . . . ." It seems Rewick gave her employees "reign" to process returns. Although she testified they weren't supposed to use her number, apparently they did with some frequency.

Rewick and Dobson also prepared a second spread sheet, admitted as People's exhibit 2, showing returns made day by day and noting whether they were cash returns or credit card returns. The vast majority of the returns were cash returns, as opposed to ones linked to defendant's credit card and ATM card. Apparently, "a large majority" of the returns were under Rewick's employee number.

Ashley Dobson testified regarding the preparation of the spread sheets. She testified she considered returns suspicious if there was no customer name. She also noticed a large amount of cash returns, which was unusual. She found $70,167.67 worth of suspicious returns. She admitted on cross-examination she did not "actually have any knowledge that these numbers that [she] calculated are actually money stolen . . . ."

In a written order, the trial court ordered defendant to pay restitution in the amount of $40,695 plus interest, with a credit of the $10,000 he had already paid. The court noted Rewick had testified to a loss of $70,167.67 while defendant admitted he took "approximately $10,000 in credit returns." As far as we can tell, the amount of $40,695 does not appear in the evidence presented to the court.

The court "took into account Ms. Rewick's testimony that, following defendant's termination the store's cash deposits were significantly higher and the customer return rate significantly lower, defendant's status as the store manager, and the large number of suspicious returns . . . that occurred when defendant was on duty." Noting that restitution is meant to compensate the victim for actual loss and not provide a windfall (*People v. Chappelone* (2010) 183 Cal.App.4th 1159, 1172), the court "discounted the amount of restitution claimed by the victim for cash returns, because of the return procedures in place (at the time all employees used Ms. Rewick's code to process returns), and the inability of the store to compare the reported returns with its inventory."

3

## II. DISCUSSION

Defendant challenges only the restitution order. He concedes People's exhibit 2 and related testimony show $11,337.11 in fraudulent returns linked to his credit card and ATM card. But defendant disputes the proof of loss relating to the cash returns, i.e., the basis of the balance of the restitution order. He contends the restitution order is not supported by substantial evidence, and the trial court abused its discretion by failing to employ a method rationally designed to determine the victim's economic loss and by failing to make a clear statement of the calculation method used.

We review a trial court's restitution order for abuse of discretion. (*People v. Giordano* (2007) 42 Cal.4th 644, 663 (*Giordano*).) This abuse of discretion standard is "deferential," but "not empty." (*People v. Williams* (1998) 17 Cal.4th 148, 162 (*Williams*).) We must determine whether a restitution order falls outside of reason, in light of the pertinent facts and law. (*Williams, supra,* at p. 162.) "Under this standard, while a trial court has broad discretion to choose a method for calculating the amount of restitution, it must employ a method that is rationally designed to determine the . . . victim's economic loss. To facilitate appellate review of the trial court's restitution order, the trial court must take care to make a record of the restitution hearing, analyze the evidence presented, and make a clear statement of the calculation method used and how that method justifies the amount ordered." (*Giordano, supra*, at pp. 663–664; accord, *People v. Jones* (2010) 187 Cal.App.4th 418, 423 (*Jones*).)

In the present case, the trial court did not make a clear statement of its calculation method. As such, we cannot tell whether the court used a method rationally designed to determine the victim's economic loss. Simply put, *we* are at a loss to determine the source of the amount of restitution ordered. The credit card and ATM returns seem limited to $11,337.11, while the trial court ordered $40,695, a figure of puzzling provenance. The trial court *discounted* the cash returns because the return procedures in place at the time apparently allowed all employees to use Rewick's code to process returns, and because the store was unable to compare the reported returns with its

4

inventory.  However, it is unclear what method the court used in determining the amount of discount to be applied.

The trial court appears to have derived the restitution amount from speculation and a misreading of the evidence.  The court noted a large number of suspicious returns occurred when defendant was on duty, but other employees were on duty as well, and the evidence could not link defendant to any specific cash transaction.  The court referred to Rewick's testimony that "the store's cash deposits were significantly higher" after defendant was terminated in 2010—but that does not accurately reflect her testimony.  Testifying in April 2012, she said her store had $843,000 in sales "last year"—presumably, the calendar year 2011—and had $975,000 in sales the 11 months before that—presumably, most of 2010, during which defendant was in her employ only until June.  The trial court also noted "the customer return rate [was] significantly lower" after defendant's departure—Rewick testified it dropped "quite a bit"—but this is imprecise.  It also does not take into account the fact that two other employees working at the same time as defendant also left the store's employ.

We must remand this matter to the trial court for recalculation of the restitution amount and for a clear statement of its calculation methods.  (*Jones, supra,* 187 Cal.App.4th at pp. 427–428.)

## III.  DISPOSITION

The restitution order is reversed.  The cause is remanded to the trial court for further proceedings not inconsistent with this opinion.

_____
Sepulveda, J.[*]

We concur:

_____
Dondero, Acting P.J.

_____
Banke, J.

---

[*] Retired Associate Justice of the Court of Appeal, First Appellate District assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.