Filed 3/15/16  P. v. Tansiel CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ROMAN TANSIEL,<br><br>Defendant and Appellant. | B261073<br><br>(Los Angeles County<br>Super. Ct. No. BA428462) |

APPEAL from an order of the Superior Court of Los Angeles County, Paul T. Suzuki, Judge.  Affirmed.

Karyn H. Bucur, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Michael R. Johnsen and Marc A. Kohm, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Roman Tansiel appeals from the restitution order entered after he pleaded no contest to assaulting Jose Gomez with a deadly weapon (a bottle) and admitted the special allegation he had inflicted great bodily injury. Tansiel contends he should not have been ordered to pay restitution for Gomez's lost wages because the back injury that prevented Gomez from working was not caused by the assault. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Plea*

Tansiel was charged by felony complaint with one count of assault with a deadly weapon. (Pen. Code, § 245, subd. (a)(1).)[1] It was specially alleged the offense was a hate crime (§ 422.75, subd. (a)) and Tansiel personally inflicted great bodily injury (§ 12022.7, subd. (a)). On November 13, 2014 Tansiel pleaded no contest to assault with a deadly weapon and admitted the great bodily injury allegation; the hate crime allegation was dismissed. Pursuant to a negotiated disposition, the court sentenced Tansiel to a two-year state prison term. A restitution hearing was set for November 25, 2014.

2. *The Restitution Hearing*

At the restitution hearing Gomez testified Tansiel struck him on the back of the head with a bottle as he was about to step off a bus at its front door. Tansiel subsequently tried to hit Gomez's partner with the bottle, but Gomez pushed Tansiel. Tansiel then hit Gomez in the chest and abdomen. The further altercation between Tansiel and Gomez occurred outside the rear door of the bus.

Gomez received three stitches in the back of his head. Medical insurance paid all but $676.79 of the cost.

As of the time of the hearing, approximately five months after the incident, Gomez had been unable to return to work because of back pain. An in-home care services provider, he had been earning $1,250 every two weeks. Nine weeks after the incident he began receiving disability payments of $200 per week. Gomez testified he did not know when he would be able to return to work. When challenged on cross-examination

---

[1]     Statutory references are to this code.

2

whether the back pain had been caused by being hit with the bottle, Gomez responded, "I have no way of knowing if it was or not. All I know is that after that happened, I have been in pain." Gomez conceded his back was not bothering him when he walked to the back of the bus after the initial attack.

During argument the prosecutor stated Gomez was seeking restitution in the amount of $6,189.29: $5,512.50 for lost wages and $676.79 for medical expenses. Defense counsel contended Tansiel should not be required to pay restitution for lost wages because it was clear Gomez hurt his back during the brawl, not as a result of the assault with the bottle. She argued, "Mr. Gomez took it into his own hands to go after Mr. Tansiel, and I get that. But that doesn't mean . . . Mr. Tansiel is liable financially for what happened during that incident. He didn't plead to a battery. He didn't plead to an assault on Mr. Gomez's friend or whatever have you. He plead[ed] to hitting Mr. Gomez on the back of the head with a bottle."

The court ordered Tansiel to pay $6,189.29 in restitution. The court found, "[T]his is a continuation of the . . . attack upon the victim and then the subsequent coming to the defense of another. Also, there was an indication that the witness could not testify as to when the back pain occurred, whether it was a result of the head or the fighting. But the court did view it as one single act. Not only that, the court does feel that when people are under certain stresses, adrenaline kicks in. It's foreseeable that someone would not feel the pain while in combat with somebody such as this one."

## DISCUSSION

The California Constitution mandates restitution from a convicted wrongdoer to a victim who has suffered an economic loss unless compelling or extraordinary reasons exist for not ordering restitution. (Cal. Const., art. I, § 28, subd. (b)(13)(B).) Section 1202.4, subdivision (f), part of the implementing legislation for this mandate, states, "Except as provided in subdivisions (q) and (r), in every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing

3

to the court." The statutory restitution provisions are to be construed broadly to further the goals of public safety, victim compensation and offender rehabilitation. (*Luis M. v. Superior Court* (2014) 59 Cal.4th 300, 304.)

The standard of proof at a restitution hearing is preponderance of the evidence. (*People v. Millard* (2009) 175 Cal.App.4th 7, 26.) We review restitution orders for abuse of discretion. (*People v. Giordano* (2007) 42 Cal.4th 644, 663.) If there are questions of statutory interpretation, we review those de novo. (*In re Tobacco II Cases* (2009) 46 Cal.4th 298, 311; *People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432.)

Relying primarily on *People v. Lai* (2006) 138 Cal.App.4th 1227, Tansiel contends it was improper to order restitution for Gomez's lost wages because that economic loss was not incurred as a result of the criminal conduct—assault with a deadly weapon—to which Tansiel pleaded no contest. In *Lai* the defendant was convicted of offenses including welfare fraud and ordered to pay victim restitution of $261,543.57. On appeal Lai challenged $11,230 of the award attributable to fraud occurring before the charged period, arguing "he [could not] be assessed restitution for losses that did not result from the crimes of which he was convicted." (*Id.* at p. 1246.) The court agreed, reversing that portion of the award. (*Ibid.* ["when a defendant is sentenced to state prison, section 1202.4 limits restitution to losses caused by the criminal conduct for which the defendant was convicted"].) In the case at bar Tansiel argues the only conduct for which he was convicted was hitting Gomez's head with a bottle and that did not cause his back pain: Gomez testified his back was not bothering him when he walked toward the back of the bus after he was struck.

Tansiel's argument is wholly without merit. The *Lai* court addressed losses that had occurred before the charged criminal conduct and thus could not possibly have been caused by it. Here, Gomez's lost wages occurred after the criminal conduct. The question whether Tansiel's conduct caused Gomez's economic loss is analyzed by applying tort principles of causation. (*People v. Holmberg* (2011) 195 Cal.App.4th 1310, 1321; *People v. Jones* (2010) 187 Cal.App.4th 418, 424-427.) "California courts have

4

adopted the 'substantial factor' test in analyzing proximate cause. [Citation.] "'The substantial factor standard is a relatively broad one, requiring only that the contribution of the individual cause be more than negligible or theoretical." [Citation.] Thus, "a force which plays only an 'infinitesimal' or 'theoretical' part in bringing about injury, damage, or loss is not a substantial factor" [citation], but a very minor force that does cause harm is a substantial factor [citation]. This rule honors the principle of comparative fault.'" (*Holmberg*, at pp. 1321-1322.) Even if Gomez's back pain resulted from the scuffle after the assault, there is no question the assault played a significant role in bringing about the injury. Regardless whether Gomez prompted the skirmish as a reaction to the assault or to defend his companion whom he believed Tansiel was about to hit, it was Tansiel's conduct that initiated the conflict and provoked Gomez's response. (See *id.* at p. 1322 [defendant's knowing receipt of stolen property and failure to turn it over to the police "was a concurrent cause in depriving the victims of the use of their property . . . and was a substantial factor in causing the harm they suffered"].) The finding that Gomez's back injury was caused by Tansiel's aggravated assault is amply supported by the record.

**DISPOSITION**

The order is affirmed.


                                                                    PERLUSS, P. J.

We concur:



        SEGAL, J.



        BLUMENFELD, J.*

_____

*       Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

5