Filed 5/3/21  P. v. Ruiz CA1/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JOHN ROBERT RUIZ,<br><br>        Defendant and Appellant. | A159939<br><br>(Napa County<br>Super. Ct. No. CR-183993) |

Defendant John Ruiz worked at a winery.  He pleaded no contest to embezzlement and grand theft and was placed on probation after he personally profited from selling some of the winery's property without his employer's knowledge.  He appeals from a restitution order that required him to pay approximately $145,000 in restitution to the winery.  He contends that the restitution award should be vacated because there was not substantial evidence that the company sustained an economic loss, and to the extent there was such a loss he did not proximately cause it.  We reject these claims and affirm.

1

# I.
## FACTUAL AND PROCEDURAL
## BACKGROUND

Ruiz worked as a cellar master at Stags Leap Winery, which is owned by Treasury Wine Estates.[1]  The winery stored barrels of wine on racks holding two barrels.  In 2015, after an earthquake, Ruiz was given responsibility for replacing the two-barrel racks with four-barrel racks, which are more stable.

Initially, Ruiz and his supervisor intended to buy new four-barrel racks from a company called Western Square, which agreed to remove the two-barrel racks free of cost.  Ruiz's supervisor testified that the two-barrel racks were going to be "scrapped because they weren't usable."  But Ruiz proposed an alternative plan with another company, Rack and Maintenance, to realize some value from the two-barrel racks.  Under this plan, Rack and Maintenance would exchange several hundred two-barrel racks for four-barrel racks, at a ratio of 25 to 1.  Ruiz's supervisor agreed to the arrangement.

During spring 2015, 4400 two-barrel racks were removed from Stags Leap Winery and replaced with 176 four-barrel racks in the agreed-upon ratio.  But this did not occur as the result of the plan with Rack and Maintenance.  Instead, Ruiz sold the two-barrel racks to a third company, Country Connection, for $175,000.  He arranged for the payment checks to be made out to "Lee's Removal Service," and he deposited them into his personal bank accounts.  He then ordered the 176 four-barrel racks from Rack and

---

[1] The facts about the offenses are drawn from the evidence presented at the preliminary hearing, to which Ruiz stipulated as the factual basis of his plea, and from the evidence presented at the restitution hearing.

Maintenance at a cost of $30,000, but he never paid for them. Soon after, Ruiz left his position at the winery.

In 2017, Treasury Wine Estates learned that it had never paid for the four-barrel racks. It then paid Rack and Maintenance the $30,000 owed, and its representatives contacted the authorities about Ruiz's theft. When confronted, Ruiz "confirmed that exactly what [his supervisor] . . . described happened . . . [and that he] would do everything he could to make up for it."

Ruiz was charged with fourteen felony counts—seven counts of embezzlement of more than $950 and seven counts of grand theft of personal property—and sentence enhancements based on the value of the property exceeding $65,000 and based on the taking of more than $100,000.[2] Two years later, he pleaded no contest to one count of embezzlement, one count of grand theft, and the sentence enhancement for embezzlement of more than $100,000. As part of the plea agreement, Ruiz reimbursed Treasury Wine Estates for the $30,000 it paid to Rack and Maintenance, but it was stipulated that his admission to the embezzlement enhancement would not be evidence for the purpose of ordering further restitution.

At sentencing, the trial court suspended imposition of sentence and placed Ruiz on formal probation for five years. His probation conditions including serving 180 days in county jail and paying additional restitution to Treasury Wine Estates.

At the restitution hearing, Ruiz's supervisor testified that Ruiz sold the two-barrel racks for a personal profit of approximately $175,000 and that

---

[2] The charges were brought under Penal Code sections 503 (embezzlement of over $950), 487, subdivision (a) (grand theft of personal property), 12022.6, subdivision (a)(1) (enhancement for loss over $65,000), and 186.11, subdivision (a)(3) (enhancement for aggravated white collar crime). All further statutory references are to the Penal Code.

3

Treasury Wine Estates paid Rack and Maintenance $30,000 for the 176 four-barrel racks Ruiz ordered.  The People sought $145,443 in direct restitution: $175,443 for the two-barrel racks, plus 10 percent interest from the date of sentencing, minus the $30,000 in restitution Ruiz had already paid.

Ruiz opposed the request, arguing that the restitution award should be limited to $30,000 because Treasury Wine Estates planned to throw away the two-barrel racks and thus incurred no loss.  In response, the prosecution pointed out that Ruiz was never authorized to personally profit from the sale of the two-barrel racks and that by deceptively selling them he deprived the company of $175,000.

The trial court observed that the legal question of whether to award restitution to Treasury Wine Estates for the two-barrel racks, which the company did not initially recognize had sale value, was a "novel sort of issue." The court ultimately determined that Ruiz "should have been honest with [Treasury Wine Estates] and he deceived them" and that he did not "deserve[] to profit" from his actions.  The court awarded restitution in the amount sought by the People and ordered Ruiz to pay Treasury Wine Estates a total of $145,443, plus 10 percent interest from the date of sentencing.

II.
DISCUSSION

A.    *The Trial Court Properly Determined that Treasury Wine Estates Sustained an Economic Loss.*

Ruiz argues that the restitution award should be vacated because the record lacks substantial evidence that Treasury Wine Estates sustained an economic loss, since the company had not expected to profit from the two-barrel racks and gave him permission to discard them or trade them.  We disagree.

4

Restitution to a "victim of crime who incurs an economic loss as a result of the commission of a crime" is mandatory. (§ 1202.4, subd. (a)(1).) "[T]he [trial] court shall require that the defendant make restitution to the victim . . . in an amount established by court order, based on the amount of loss claimed by the victim . . . or any other showing to the court." (§ 1202.4, subd. (f).) Restitution must be "sufficient to fully reimburse the victim . . . for every determined economic loss incurred as the result of the defendant's criminal conduct." (§ 1202.4, subd. (f)(3).) The "party seeking restitution" has the burden "to provide an adequate factual basis for the claim" by a preponderance of the evidence. (*People v. Giordano* (2007) 42 Cal.4th 644, 664.)

We review a trial court's restitution award for an abuse of discretion, asking " 'whether the ruling in question "falls outside the bounds of reason" under the applicable law and the relevant facts.' " (*People v. Giordano*, *supra*, 42 Cal.4th at p. 663.) " '[T]he court's discretion in setting the amount of restitution is broad, and it may use any rational method of fixing the amount of restitution as long as it is reasonably calculated to make the victim whole.' " (*People v. Millard* (2009) 175 Cal.App.4th 7, 26.) " ' "When there is a factual and rational basis for the amount of restitution ordered by the trial court, no abuse of discretion will be found by the reviewing court." ' " (*Ibid.*)

The issue is whether Ruiz's crimes caused Treasury Wine Estates to sustain an "economic loss" that can be quantified in dollars, to the extent possible, based on evidence presented at the restitution hearing. (See § 1202.4, subd. (f)(3).) The People presented evidence that Ruiz's supervisor did not approve Ruiz's transaction with Country Connection, and the trial court found that Treasury Wine Estates did not give Ruiz permission to sell company property for personal profit. Ruiz's supervisor testified that as a

result of the transaction, the company lost $175,000, the amount of money Ruiz received for the two-barrel racks. (See § 1202.4, subd. (f)(3)(A) [value of stolen items may be replacement cost of similar property].) Since there was sufficient evidence that the two-barrel racks had value, the court did not abuse its discretion in concluding that Treasury Wine Estates suffered an economic loss.

> B. *The Trial Court Properly Found that Ruiz's Conduct Caused the Economic Loss to Treasury Wine Estates.*

Ruiz relies on *People v. Jones* (2010) 187 Cal.App.4th 418 (*Jones*) to argue that even if Treasury Wine Estates sustained an economic loss, the People failed to show that his offenses proximately caused the loss. We are not persuaded.[3]

The victim in *Jones* sought restitution for damage to her vehicle that occurred in an accident with the defendant, who pleaded no contest to driving under the influence of alcohol. (*Jones, supra*, 187 Cal.App.4th at p. 420.) The victim also sought restitution for subsequent damage to her vehicle that occurred while parking at the courthouse to attend a hearing in the defendant's case. (*Id.* at p. 425.) The Third District Court of Appeal rejected the trial court's grant of restitution for the subsequent damage, an award based on the rationale that the victim would not have been at the courthouse but for the first accident. The Court of Appeal held that tort causation principles should apply in criminal restitution cases because section 1202.4, subdivision (f)(3), states that a restitution order " 'shall be of a dollar amount that is sufficient to fully reimburse the victim . . . for every determined economic loss incurred *as the result of* the defendant's criminal conduct . . . .'

---

[3] Since we conclude that the restitution order is consistent with principles of causation, we reject the cursory argument that Ruiz was denied federal due process because the trial court misapplied those principles.

6

[Citation.] The causal connection embodied in the words 'as the result of' is certainly indicative of direct causation. Just as in tort law, however, the law must impose limitations on liability for victim restitution other than simple direct causality or else a defendant will face infinite liability for his or her criminal acts, no matter how remote the consequence." (*Jones*, at p. 425.)

Prior to *Jones*, "no published opinion . . . directly applied the principles of proximate causation to victim restitution," but *Jones* reasoned that that "does not mean those principles do not apply. Indeed, the concept of proximate cause has routinely been applied to other aspects of criminal liability." (*Jones*, *supra*, 187 Cal.App.4th at p. 426.) As an example, *Jones* discussed a case in which "our Supreme Court confronted 'a question concerning proof of proximate causation in a provocative act murder case' . . . . [T]he court observed (in part) as follows: ' "In general, an 'independent' intervening cause will absolve a defendant of criminal liability. [Citation.] However, in order to be 'independent' the intervening cause must be 'unforeseeable[,] an extraordinary and abnormal occurrence, which rises to the level of an exonerating, superseding cause.' [Citation.] On the other hand, a 'dependent' intervening cause will not relieve the defendant of criminal liability. 'A defendant may be criminally liable for a result directly caused by his [or her] act even if there is another contributing cause. If an intervening cause is a normal and reasonably foreseeable result of defendant's original act the intervening act is "dependent" and not a superseding cause, and will not relieve defendant of liability. . . . "The precise consequence need not have been foreseen; it is enough that the defendant should have foreseen the possibility of some harm of the kind which might result from his act." ' " ' " (*Id.* at pp. 427–428, quoting *People v. Cervantes* (2001) 26 Cal.4th 860, 862−863, 871.) *Jones* reversed the

7

restitution order on other grounds and directed the trial court to address on remand whether the defendant proximately caused damage to the victim's vehicle or whether it was caused by an independent intervening cause. (*Jones*, at pp. 427–428.)

*Jones* does not support Ruiz's argument. Ruiz contends that the "actions and inactions [of Treasury Wine Estates] became an intervening factor which negated proximate cause" because "[a]ny loss was proximately caused by [its] failures to follow good employment practices and to pursue [his] suggestion of selling the two-barrel racks." He claims that once he "told [Treasury Wine Estates] he might be able to get better deals" and the company failed to take "measures to protect their property," he had a "reasonable belief that the company didn't care about the racks; was not interested in any business opportunity they might represent; and just wanted them gone." But as cellar master, Ruiz was responsible for purchasing four-barrel racks and disposing of the two-barrel racks. Since transactions for barrel racks were Ruiz's responsibility, it was foreseeable that his supervisor would trust Ruiz to sell the barrel racks, not circumvent Ruiz to do so. Thus, even if the company's supposed inaction was an intervening cause at all, at best it was a *dependent* intervening cause.

In sum, the trial court did not abuse its discretion in awarding restitution to Treasury Wine Estates, because sufficient evidence demonstrated that the two-barrel racks had value and Ruiz's theft and embezzlement proximately caused economic loss to the company.

### III.
### DISPOSITION

The March 6, 2020 restitution order is affirmed.

8

_____
Humes, P.J.

WE CONCUR:


_____
Margulies, J.


_____
Sanchez, J.


*People v. Ruiz*  A159939

9