Filed 5/21/24  In re E.M. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| In re E.M., a Person Coming Under the Juvenile Court Law. | C098263 |
| THE PEOPLE, | (Super. Ct. No. 52009376) |
| Plaintiff and Respondent, | |
| v. | |
| E.M., | |
| Defendant and Appellant. | |

Minor E.M. drove his car while his passenger, minor R.M., fired E.M.'s air gun out the window, hitting another driver repeatedly in the face with gel pellets.  The juvenile court found E.M. had violated Penal Code section 246.3, subdivision (b), which prohibits willful discharge of a BB device in a grossly negligent manner.  The court adjudged E.M. a ward of the court and placed him on probation.  As a condition of probation, the court ordered E.M., R.M., and their parents to jointly and severally pay restitution for damage to the victim's minivan in the amount of $12,354.30.  On appeal,

1

E.M. contends the juvenile court's findings that the minors' conduct proximately caused the damage and that they were 90 percent responsible for the damage are not supported by substantial evidence. E.M. also contends the juvenile court should have found compelling and extraordinary reasons justified declining to impose restitution.

We see no merit in any of E.M.'s arguments and we will affirm the restitution order.

## BACKGROUND

Because E.M.'s contentions all challenge the sufficiency of the evidence supporting the juvenile court's factual determinations, we relay the facts in the light most favorable to the court's order and " ' " 'presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' " ' " (*People v. Clark* (2011) 52 Cal.4th 856, 942-943.)

E.M. was driving his car with minor R.M. in the passenger seat when R.M. fired gel pellets from E.M.'s air gun out the car window and into a nearby minivan, striking victim L.F. in the side of the face, shoulder, and neck. L.F., who served for 11 years in the United States Army infantry, including seeing combat in Afghanistan and Iraq, described the feeling of the pellets as like sand and rocks hitting him after an explosion. E.M. sped off, and L.F. chased E.M.'s car, trying to identify the shooters and their car. L.F. explained to police that he did not want the shooters to get away with such dangerous behavior in his neighborhood.

When L.F. pulled up alongside E.M.'s car, R.M. again shot L.F. in the face with gel pellets. L.F. then steered his van into the side of E.M.'s car, causing it to spin and come to a stop. L.F. later explained that he had been in "full blown 'PTSD' mode" and had intended to stop the vehicle and remove the weapon. When L.F. blocked E.M.'s car, E.M. rammed the van to try to get away, "causing significant property damage." L.F. got out of the van, told the minors to get out of their car, and began yelling for someone to call the police. L.F. dialed 911 on his phone and then tried to reach into E.M.'s car to

2

find the pellet gun. E.M. punched L.F. repeatedly, but after three or four attempts, L.F. found the pellet gun and threw it into the street. The minors kept trying to get back into their car before the police arrived, but L.F. did not let them do so.

E.M. pled no contest to willfully discharging a BB device in a grossly negligent manner, and the juvenile court found the charge true. The court then adjudged E.M. a ward of the court and placed him on probation. The juvenile court held a restitution hearing, at which the parties based their arguments on the facts contained in the police report and stipulated that E.M.'s briefing accurately described L.F.'s statement to police, as recorded by a camera worn by the interviewing officer. The People also submitted evidence that L.F.'s van had suffered $20,163.46 in damage, the van was worth $21,227, and L.F. sold the van for $7,500. L.F. asked for restitution for the replacement cost of the van less the amount he sold it for with the damage, a difference of $13,727.

E.M. argued: (1) his conduct did not proximately cause the damage to L.F.'s vehicle; (2) any restitution should be reduced due to L.F.'s own negligence; and (3) the juvenile court should find compelling and extraordinary reasons not to impose restitution. E.M. also argued that, even if the damage from the first collision, totaling $3,495.72, was a sufficiently foreseeable reaction by L.F. to being shot by water pellets, the damage from the second collision, totaling $13,952.21, was not foreseeable.

The People responded that it was reasonably foreseeable that shooting a pellet gun at another driver on the road could lead the victim to try to chase the shooter's car, given the danger posed by shooting drivers in the face. Many people would consider L.F. to have done a good thing by ensuring that E.M. and R.M. were prevented from shooting and endangering more people. In fact, even more dangerous actions are foreseeable—for example, someone being shot by the pellet gun could have returned fire with a real gun. The People also argued that L.F. had not been negligent because he had intentionally steered into E.M.'s car to prevent their escape. But even if L.F. were negligent, the court should only discount the amount of damage caused by the first collision, when L.F.

3

steered into E.M's car, and should still order restitution for the second collision, when E.M. rammed L.F.'s van to try to escape.

The juvenile court found that E.M.'s "actions as driver of the vehicle from which his passenger, [R.M.], discharged a barrage of [air gun]-launched water pellets, initiat[ed] a series of causally related events that resulted in the collision resulting in significant damage to [L.F.'s] van." The court further found L.F.'s actions in response to being shot with pellets while driving were foreseeable. Applying comparative negligence principles, the court found that L.F. also acted negligently and was responsible for 10 percent of the damage. Accordingly, the court awarded 90 percent of the restitution L.F. requested, totaling $12,354.30. The court ordered E.M. and R.M. and their parents to pay the challenged restitution award jointly and severally.

E.M. timely appealed from the restitution order. After several extensions of time to augment the record and for the parties to prepare their briefing, this case was fully briefed on April 15, 2024.

DISCUSSION

E.M. argues: (1) we should reverse the restitution order because his conduct was not a substantial factor in damaging the victim's van; (2) his conduct was not the proximate cause of the damage; (3) the victim was more than 10 percent at fault for the damage; and (4) there were compelling and extraordinary reasons not to impose restitution.

A.     *Substantial Factor*

E.M. first contends his violation of the law, unlawful discharge of a BB device, was not a substantial factor in damaging L.F.'s van. In the juvenile court, E.M. did not dispute his conduct was a substantial factor in damaging the van, but argued instead that L.F.'s conduct was a superseding cause precluding imposition of liability, so E.M. has arguably forfeited this argument. In any event, E.M.'s argument fails because: (1) the juvenile court had the authority to impose restitution upon him even for uncharged

4

conduct, like ramming L.F.'s van, as a condition of probation (*In re S.O.* (2018) 24 Cal.App.5th 1094, 1102), and (2) as explained below, substantial evidence supports the juvenile court's determination that E.M.'s conduct was a substantial factor in damaging L.F.'s van.

Welfare and Institutions Code[1] section 730.6 requires the juvenile court to order any minor it finds has violated the law to pay restitution for the economic loss of any victim of that violation. (§ 730.6, subd. (a)(1), (2).) The minor's conduct must be a substantial factor in causing the victim's economic loss. (*In re A.M.* (2009) 173 Cal.App.4th 668, 673.) " 'A substantial factor is more than a trivial or remote factor. However, it does not have to be the only factor that causes the injury.' " (*Ibid.*) Thus, a juvenile court properly found that a minor's driving without a license was a substantial factor in the death of a pedestrian, even though the pedestrian wore dark clothing and was walking on a dark, unlighted street. (*Id.* at pp. 673-674.)

Whether a minor's actions were a substantial factor in causing a victim's economic loss is a question of fact that we review for substantial evidence. (*In re A.M.*, *supra*, 173 Cal.App.4th at p. 674; accord, *In re S.E.* (2020) 46 Cal.App.5th 795, 804, 810.) This means we will not reverse the juvenile court's finding "if there is 'evidence from which it may be reasonably inferred that [the minor's] act was a substantial factor in producing' " the victim's damage. (*People v. Butler* (2010) 187 Cal.App.4th 998, 1010; see *People v. Scola* (1976) 56 Cal.App.3d 723, 726-728 [applying "the familiar rule of proximate cause" in a criminal case].) " 'In reviewing the sufficiency of the evidence [to support a factual finding], the " 'power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted,' to support the trial court's findings." [Citations.] Further, the standard of proof at a restitution hearing is by a preponderance of the evidence, not proof beyond a

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

reasonable doubt. [Citation.] "If the circumstances reasonably justify the [juvenile court's] findings," the judgment may not be overturned when the circumstances might also reasonably support a contrary finding. [Citation.] We do not reweigh or reinterpret the evidence; rather, we determine whether there is sufficient evidence to support the inference drawn by the trier of fact.' " (*People v. Millard* (2009) 175 Cal.App.4th 7, 26 (*Millard*).)

Here, the evidence presented at the restitution hearing supports the inference that shooting L.F. with pellets while he was driving was a substantial factor in damaging L.F.'s van. L.F. explained that he followed E.M.'s car after being shot to identify the shooters and to stop their dangerous behavior. When L.F. pulled up next to E.M.'s car, instead of stopping, R.M. shot L.F. in the face with more pellets from close range. L.F. then steered his van into the side of E.M.'s car, causing the car to spin and stop. When L.F. blocked E.M.'s car, E.M. rammed the van to try to get away, which E.M. concedes caused most of the damage.

From this evidence, the juvenile court could reasonably infer that E.M.'s actions in aiding and abetting the two shootings were more than a trivial or remote factor in causing the damage to L.F.'s van. Because R.M. shooting L.F. in the face with pellets while L.F. was driving was among L.F.'s primary motivations for following the minors and stopping their car, we cannot say the minors' actions were only a trivial factor. And because the collisions immediately followed the second shooting, we cannot say the minors' actions were a remote factor. In fact, we see no substantial evidence to support the contrary inference, that E.M.'s actions were not a substantial factor in damaging L.F.'s van, which perhaps explains why E.M. did not make this argument in the juvenile court.

B.      *Superseding Cause*

E.M. next contends that L.F.'s conduct in chasing E.M.'s car and then intentionally colliding with it was unforeseeable and therefore serves as a superseding cause that relieves E.M. of liability.

6

As this court has previously explained, the concept of a superseding cause is another principle "involved in determining proximate causation," which applies to victim restitution proceedings in order to "impose limitations on liability for victim restitution other than simple direct causality or else a defendant will face infinite liability for his or her criminal acts, no matter how remote the consequence." (*People v. Jones* (2010) 187 Cal.App.4th 418, 425.) Though we previously applied the concept in a criminal proceeding, we did so by interpreting the phrase "economic loss incurred *as the result of* the defendant's criminal conduct" in Penal Code section 1202.4, subdivision (f)(3). (*Jones*, at p. 425.) Parallel language governs restitution in juvenile court proceedings (see § 730.6, subd. (a)(1)), so, like the parties, we will assume that comparative negligence principles apply to restitution proceedings under section 730.6.

" ' "In general, an 'independent' intervening cause will absolve a defendant of criminal liability. [Citation.] However, in order to be 'independent' the intervening cause must be 'unforeseeable . . . an extraordinary and abnormal occurrence, which rises to the level of an exonerating, superseding cause.' [Citation.] On the other hand, a 'dependent' intervening cause will not relieve the defendant of criminal liability. 'A defendant may be criminally liable for a result directly caused by his act even if there is another contributing cause. If an intervening cause is a normal and reasonably foreseeable result of defendant's original act the intervening act is "dependent" and not a superseding cause, and will not relieve defendant of liability. [Citation.] "[ ] The consequence need not have been a strong probability; a possible consequence which might reasonably have been contemplated is enough. [ ] The precise consequence need not have been foreseen; it is enough that the defendant should have foreseen the possibility of some harm of the kind which might result from his act." ' " ' " (*People v. Jones, supra*, 187 Cal.App.4th at p. 427.) Determination of a superseding cause is also a question of fact, so we again review for substantial evidence to support the juvenile court's determination. (*People v. Cervantes* (2001) 26 Cal.4th 860, 871-872.)

We conclude substantial evidence supports the juvenile court's determination that L.F.'s actions were not an extraordinary and abnormal occurrence. L.F. explained his desire to stop the minors' dangerous actions and protect his neighborhood. Initially he planned to follow them to identify the vehicle and persons involved to report them to the police. These initial actions are indisputably a foreseeable response to being shot in the face with pellets fired from another car that then speeds away. Then, when L.F. pulled up next to E.M.'s car, R.M. again fired at L.F.'s face, this time from close range. After this second shooting, L.F. steered his van into the side of E.M.'s car, forcing it to spin and stop, and then blocked the car with his van to prevent escape. This is a more drastic response by L.F., but we cannot say the juvenile court's determination that the response was foreseeable is entirely unsupported by substantial evidence. Rather, the court could have reasonably inferred that the minors' speeding, refusal to stop, and second close-range shooting would foreseeably result in an escalating response from the victim. As the People argued in the juvenile court, shooting drivers in the face with a pellet gun is sufficiently dangerous that even another driver responding with real gunfire might not be unforeseeable in the circumstances. We will not second-guess the juvenile court's weighing of the evidence, even though " 'the circumstances might also reasonably support a contrary finding.' " (*Millard*, *supra*, 175 Cal.App.4th at p. 26.)

C.     *Comparative Negligence*

E.M. next contends the juvenile court erred by applying comparative negligence principles and determining that L.F. was 10 percent at fault for the damage to his van. E.M. does not, however, offer any suggestion as to what apportionment of fault would be supported by the evidence, merely asking us to remand to the juvenile court for "a more reasonable and appropriate calculation." E.M.'s argument again fails to account for the standard of review.

As an initial matter, though the People accept that principles of comparative negligence apply in restitution proceedings (*Millard*, *supra*, 175 Cal.App.4th at pp. 38-

8

43), they note in passing that E.M.'s conduct in this case is not necessarily negligent because a violation of Penal Code section 246.3 is an intentional act, done in a grossly negligent manner (Pen. Code, § 246.3, subd. (a); *People v. Alonzo* (1993) 13 Cal.App.4th 535, 538). As the People do not develop this argument, we will not consider it here. Instead, we will assume that comparative negligence principles apply to restitution proceedings under section 730.6, which requires restitution for economic loss incurred "as a result of the minor's conduct." (§ 730.6, subd. (a)(1).) "If the doctrine of comparative negligence were not applicable, a criminally negligent [minor] could be required to reimburse a victim for economic losses that were comparatively the result or the fault of the victim's own negligence." (*Millard*, at p. 39.)

"The fundamental principle of comparative negligence is to assign responsibility and liability for damage in direct proportion to the amount of negligence of each of the parties." (*Millard*, *supra*, 175 Cal.App.4th at p. 40.) "Application of comparative negligence holds a criminally negligent defendant responsible for the full amount of the victim's economic losses that resulted from the defendant's proportionate fault." (*Id.* at p. 41.) "In the context of driving, the doctrine of comparative negligence encourages all drivers to drive their vehicles with reasonable care. Accordingly, drivers are charged with the knowledge that if they drive negligently and are partially at fault for injuries caused by their negligence, they will be held responsible for their proportionate fault in causing those injuries." (*Id.* at p. 40.) The determination of proportionate fault is a question of fact that we review for substantial evidence. (*Id.* at p. 43.)

We conclude substantial evidence supports the juvenile court's determination that the minors were 90 percent at fault for the damage to L.F.'s van. E.M. already determined in the juvenile court that only $3,495.72 of damage resulted from the collision initiated by L.F., while the second collision, in which E.M. rammed L.F.'s van to try to escape before police arrived, totaled $13,952.21. The juvenile court could have reasonably started with this 80 percent to 20 percent split and then decided that the

9

minors were 50 percent responsible for the 20 percent of the damage caused by the first collision because they had repeatedly shot L.F. in the face with pellets and fled at high speed. Once again, we cannot say the juvenile court's finding is entirely unsupported by substantial evidence.

     D.     *Compelling and Extraordinary Circumstances*

Finally, E.M. contends there were compelling and extraordinary reasons not to impose restitution. E.M. repeats the arguments we have already rejected based on L.F.'s actions being unforeseeable and extraordinary and adds that the juvenile court should not have rewarded L.F.'s "vigilante behavior" by awarding restitution.

Section 730.6, subdivision (h)(1) provides that the juvenile court "shall order full restitution unless it finds compelling and extraordinary reasons for not doing so, and states them on the record." The juvenile court found no such compelling and extraordinary reasons here. The evidence again supports the court's factual determination. As noted, we may not reject the juvenile court's findings just because the evidence would also support a different inference. Accordingly, we conclude this argument lacks merit as well.

## DISPOSITION

The juvenile court's restitution order is affirmed.

 

                                     /s/_____

                                  BOULWARE EURIE, J.

We concur:

_____
EARL, P. J.

_____
KRAUSE, J.

10