Filed 7/29/16  P. v. Schultz CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>TIOCHA ELLIOT SCHULTZ,<br><br>    Defendant and Appellant. | A144204<br><br>(Contra Costa County<br> Super. Ct. No. 51419555) |

Appellant Tiocha Elliot Schultz appeals from the trial court's restitution order requiring that appellant reimburse the victim, Pamela Duggan, for the loss of her cell phone.  Appellant contends the court erred when it determined that appellant's criminal act was the proximate cause of the victim's loss.  Based on our review of the record, we conclude substantial evidence supports the trial court's restitution order.  Accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

On August 11, 2014, Pamela Duggan gave her friend, Roozbeh Katouzi, a ride home from work.  No one else was in the car.  Duggan used her cell phone while driving Katouzi home; "within a minute" before dropping him off.  After using her cell phone, Duggan placed it back in her pocket where she always kept it.  As Duggan stopped her car, she noticed two women and a man across the street talking to one another.  Appellant was identified as the male.  Appellant approached the driver's side of Duggan's car and

---

[1]     The facts are taken from the transcripts of the preliminary hearing and the restitution hearing.

1

asked if Duggan could give him and his girlfriend a ride to the Motel 6. At the time of appellant's request, Duggan's car window was rolled up. In response to appellant's request, Duggan stated, "No, I'm sorry, I don't have any gas." Appellant again asked for a ride. Duggan rolled her window down to hear him more clearly and appellant punched her in the face. Katouzi, seated in the passenger seat, then jumped out of the car and Duggan jumped out too. When questioned as to why she got out of the car Duggan stated, "I have no idea. It was just a reaction. I mean, I shouldn't have done it, but it was the first reaction." When Duggan jumped out of the car, appellant punched her in the face again. Duggan immediately got back in her car and fled the scene. Katouzi remained at the scene arguing with appellant. Appellant followed Katouzi to the other side of the street, and then appellant ran away when Katouzi pulled out his phone.

En route to her home, Duggan reached for her cell phone to call the police but she was unable to find it. After driving for a bit and not being able to locate her phone, Duggan decided to turn around and return to the scene to find her cell phone. She arrived at the scene and scoured the area, but could not find her cell phone. Katouzi was still at the scene. Duggan borrowed his cell phone and called 911. The following day, Duggan searched her car for her cell phone, but did not find it. Katouzi testified he did not see Duggan's cell phone fall from her body. Neither Duggan nor Katouzi saw appellant take her cell phone.

The Contra Costa County District Attorney filed an information charging appellant with felony assault by means of force likely to cause great bodily injury (Pen. Code,[2] § 245, sub. (a)(4)) and misdemeanor battery (§ 242).[3] The information also alleged two prior prison term enhancements (§ 667.5, sub. (b)). Appellant pleaded no contest to the charged offenses and the sentence enhancement allegations were dismissed. At

---

[2]    All further unspecified statutory references are to the Penal Code.

[3]    After the preliminary hearing, the magistrate determined to hold appellant for the charges of felony assault by means of force likely to cause great bodily injury and misdemeanor battery. The magistrate declined to hold appellant to answer for second-degree robbery of a cell phone from Duggan, stating there was not "sufficient evidence with regards to a taking" from Duggan.

sentencing, the trial court placed appellant on probation for three years, ordered that he serve 174 days in county jail with credit for time served, and directed that appellant pay restitution to Duggan. The prosecution informed the court that Duggan was seeking restitution in the amount of $150 for the loss of her cell phone. At appellant's request, the court scheduled a restitution hearing.

At the restitution hearing both parties submitted the matter based on the preliminary hearing transcript and the oral arguments of counsel. The trial court ordered appellant to pay Duggan restitution in the sum of $150 for the loss of her cell phone. The trial court gave the following reasons in support of its ruling: "[I]t's clear in the testimony of Ms. Duggan at the preliminary hearing that she had her cell phone before she was punched by your client. After she is punched twice by your client, as well as seeing her passenger attacked by your client, she no longer has her cell phone. So under Penal Code Section 1202.4, I do find that Ms. Duggan suffered an economic loss, i.e., the loss of her cell phone, as a result of your client's criminal conduct[.]" Appellant filed a timely notice of appeal from the restitution order.

## DISCUSSION

Section 1202.4 provides that a trial court must order victim restitution in "every case in which a victim has suffered economic loss as a result of defendant's conduct." (*Id.*, sub. (f); see also § 1202.4, sub. (a)(1).) The court "shall require" the defendant to make restitution based on the amount of loss claimed by the victim . . . or any other showing to the court. . . . The court shall order full restitution unless it finds compelling and extraordinary reasons for not doing so and states them on the record. (§ 1202.4, sub. (f).) Furthermore, section 1202.4, subdivision (f)(3), provides that "[t]o the extent possible, the restitution order . . . shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as a result of the defendant's criminal conduct. . . ."

A defendant is entitled to a hearing to "dispute the determination of the amount of restitution." (§ 1202.4, sub. (f)(1).) "[T]he standard of proof at a restitution hearing is by a preponderance of the evidence, not proof beyond a reasonable doubt. [Citation.] 'If the

3

circumstances reasonably justify the [trial court's] findings,' the judgment may not be overturned when the circumstances might also reasonably support a contrary finding. [Citation.] We do not reweigh or reinterpret the evidence; rather, we determine whether there is sufficient evidence to support the inference drawn by the trier of fact. [Citation.]" (*People v. Baker* (2005) 126 Cal.App.4th 463, 469.)

"We review the trial court's restitution order for abuse of discretion. [Citations.] The abuse of discretion standard is 'deferential,' but it 'is not empty.' [Citation.] 'It asks in substance whether the ruling in question "falls outside the bounds of reason" under the applicable law and relevant facts [citations].' " (*People v. Jones* (2010) 187 Cal.App.4th 418, 423 (*Jones*).) " ' "When there is a factual and rational basis for the amount of restitution ordered by the trial court, no abuse of discretion will be found by the reviewing court." ' [Citations.]" (*In re Johnny M.* (2002) 100 Cal.App.4th 1128, 1132; see *Jones, supra,* at p. 423.)

"[C]ourts have interpreted section 1202.4 as limiting restitution awards to those losses arising out of the criminal activity that formed the basis of the conviction." (*People v. Woods* (2008) 161 Cal.App.4th 1045, 1049; see also *People v. Lai* (2006) 138 Cal.App.4th 1227, 1247 [construing "criminal conduct" language in § 1202.4, subd. (f)].) To decide whether a victim's loss is the "result of the defendant's criminal conduct" (§ 1202.4, subd. (f)(3)), courts apply tort principles of causation, including cause in fact (whether the defendant's act was " 'a necessary antecedent of an event' ") and proximate cause (whether policy considerations make it appropriate to impose liability on the defendant). (*Jones*, *supra*, 187 Cal.App.4th at pp. 425-427; see *People v. Holmberg* (2011) 195 Cal.App.4th 1310, 1320-1321 (*Holmberg*) [accord].)

California has "adopted the 'substantial factor' test in analyzing proximate cause." (*Holmberg*, *supra*, 195 Cal.App.4th at p. 1321.) This broad standard requires only that the contribution of any individual cause is more than negligible or theoretical, and that no independent, intervening, superseding cause exists to relieve the defendant of liability. (*Id*. at p. 1321; *Jones*, *supra*, 187 Cal.App.4th at p. 427.) " 'However, in order to be "independent" the intervening cause must be "unforeseeable . . . an extraordinary and

4

abnormal occurrence, which rises to the level of an exonerating, superseding cause." [Citation.] On the other hand, a "dependent" intervening cause will not relieve the defendant of criminal liability. "A defendant may be criminally liable for a result directly caused by his act even if there is another contributing cause. If an intervening cause is a normal and reasonably foreseeable result of defendant's original act the intervening act is 'dependent' and not a superseding cause, and will not relieve defendant of liability. [Citation.] '[ ] The consequence need not have been a strong probability; a possible consequence which might reasonably have been contemplated is enough. [ ] The precise consequence need not have been foreseen; it is enough that the defendant should have foreseen the possibility of some harm of the kind which might result from his act.' [Citation.]" [Citation.]' [Citations.]" (*People v. Cervantes* (2001) 26 Cal.4th 860, 871.) As we have noted, "[t]o the extent possible, [a] restitution order . . . shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred *as the result of* the defendant's criminal conduct . . . ." (§ 1202.4, subd. (f)(3), italics added.) "The causal connection embodied in the words 'as the result of' is certainly indicative of direct causation. . . . [H]owever, the law must impose limitations on liability for victim restitution other than simple direct causality or else a defendant will face infinite liability for his or her criminal acts, no matter how remote the consequence." (*Jones, supra*, at p. 425.)

Applying the above noted legal principles, we conclude there was substantial evidence from which the trial court reasonably could find that Duggan would not have lost her cell phone "but for" appellant's assaultive conduct. Duggan habitually kept her cell phone in her pocket and she used it and replaced it in her pocket just minutes before stopping her car to drop off Katouzi. Duggan exited the car after being punched by appellant, and she was punched a second time by appellant, after which she immediately reentered her car and fled the scene. Several minutes into the drive home, Duggan realized her cell phone was no longer in her pocket. Consequently, the record supports a finding that appellant's assaultive conduct was more than a negligible or theoretical cause of the loss of Duggan's cell phone.

5

We further conclude there was substantial evidence from which the trial court reasonably could find that appellant's assaultive conduct was a proximate cause of the loss of Duggan's cell phone, and Duggan's conduct during the incident was not an independent, intervening, superseding cause of her loss. We reject appellant's argument that he should not be held liable because it was totally unforeseeable that Duggan would jump out of her car and confront him, and if Duggan had not so acted, she would not have lost her cell phone. The fact that Duggan (as well as her passenger) got out of the car after appellant's first assault on Duggan is not an " 'unreasonable . . . extraordinary and abnormal occurrence, which rises to the level of an exonerating, superseding cause.' " (*Jones, supra*, 187 Cal.App.4th at p. 427.) It is reasonably foreseeable that in response to an assault while in a car a victim might seek to avoid further assaultive conduct by leaving the car. Appellant's argument also ignores the fact that the trial court's ruling was based, in part, on his commission of a second assault on Duggan after she left the car and it was after the second assault that Duggan discovered her cell phone was missing. Because it is reasonably foreseeable that a victim may lose personal property during an assault, the trial court could find appellant's second assault on Duggan was a proximate cause of the loss of her cell phone. (*Holmberg, supra,* 195 Cal.App.4th at p. 1322 ["there can be more than one cause of injury and . . . multiple causes can combine to cause harm"].) The cases cited by appellant are factually inapposite and do not support a contrary conclusion.

In sum, we conclude the record contains substantial evidence to support the trial court's finding that Duggan "suffered an economic loss, i.e., the loss of her cell phone, as a result of [appellant's] criminal conduct." Accordingly, we shall uphold the restitution order.

## DISPOSITION

The restitution order is affirmed.

_____
Jenkins, J.

We concur:

_____
Pollak, Acting P. J.

_____
Siggins, J.